GARMAN TURNER GORDON LLP
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
MARK M. WEISENMILLER, ESQ.
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone 725-777-3000
Facsimile 725-777-3112
*Attorneys for the Herbst Defendants*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-13-51237-GWZ<br>Chapter: 7 |
| PAUL A. MORABITO, | <u>Hearing:</u> |
| Debtor. | Date:   TBD<br>Time:   TBD |

**MOTION FOR AN ORDER IMPOSING SANCTIONS AGAINST JEFFREY
HARTMAN, ESQ. AND HARTMAN & HARTMAN AND DAVID HOUSTON,
ESQ. AND THE LAW OFFICES OF DAVID R. HOUSTON
<u>PURSUANT TO BANKRUPTCY RULE 9011</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   JURISDICTION AND VENUE ........................................................................ 2

III.  BACKGROUND ............................................................................................... 3

    A.   The State Court Action ............................................................................. 3

    B.   The Settlement Agreement and Default of the Settlement Agreement.................. 6

    C.   Morabito's Default and the Confession of Judgment ................................. 7

    D.   The Chapter 7 Case and the Nondischarge Action .................................. 7

    E.   The 2016 Fraud on the Court Complaint and its Removal to the Bankruptcy Court.................................................................................................... 8

    F.   The Standing Motion and Abandonment Order ........................................ 8

    G.   The Order Denying Remand and Dismissal Notice ................................... 9

    H.   The 60(d)(3) Motion Filed in the Vacated State Court Action ............. 10

    I.   Removal of the 60(d)(3) Motion ........................................................... 11

    J.   The Injunction Complaint....................................................................... 11

    K.   The Stay Motion..................................................................................... 13

    L.   Morabito's Remand Motions.................................................................. 14

    M.   Hartman's and Houston's Conduct and Rule 9011 Demand.................. 16

IV.   RELIEF REQUESTED .................................................................................... 19

V.    LEGAL ARGUMENT ..................................................................................... 19

    A.   Generally Applicable Law....................................................................... 19

    B.   There is No Basis in Fact or Law Supporting the Rule 9011 Pleadings and Hartman and Houston Would Have Known That Had They Simply Read the Documents Attached to and/or Incorporated into the Rule 9011 Pleadings. ........ 22

    C.   There is No Basis in Fact or Law Supporting the Rule 9011 Pleadings as to the ..... Relief Sought Against the Trustee and Hartman and Houston Either Should Have Known Or Would Have Known That Had They Simply Conducted a Reasonable .. And Competent Inquiry of Applicable Law .......................................................... 28

i

D.    There is No Basis in Law or Fact Supporting the Rule 9011 Pleadings Because the 60(d)(3) Motion is Barred by Nevada Claim Preclusion Law and had Hartman and Houston Conducted a Reasonable and Competent Investigation, They Would Have Known That.of the 60(d)(3) Motion ....... 31

E.    There is No Basis in Law or Fact Supporting the Rule 9011 Pleadings Because Morabito Lacks Standing to Prosecute the 60(d)(3) Motion ..... 34

F.    There is No Basis in Law or Fact Supporting Morabito's Allegation that the Ind-CPA Report and Working Capital Order were set aside by the State Court because the Herbst Parties agreed that the Ind-CPA would not consider the PBTK Working Capital Calculation .................................................... 37

G.    There is No Basis in Law or Fact to Morabito's Allegation that Issues Related to Western Energetix Cardlock Allocations" A/R, A/P, and the Dwelle Sale Transaction Were Not Litigated .......................................................... 37

H.    Hartman and Houston Failed to Withdraw the Rule 9011 Pleadings Within 21-days of Service of the Sanctions Motion Such That This Court Should Award the Herbst Defendants Monetary Sanctions Pursuant to Bankruptcy Rule 9011 ............................................................................................................ 40

VI..    CONCLUSION ............................................................................................................ 41

**TABLE OF AUTHORITIES**

Cases

Bergmann v. Boyce,
    109 Nev. 670, 856 P.2d 560 (1993) ................................................. 20

Boca Park Marketplace Syndications Group, LLC v. Higco, Inc.,
    133 Nev. 923, 407 P.3d 761 (2017) ......................................... 31, 32, 33

Canatella v. Towers (In re Alcala),
    918 F.2d 99 (9th Cir. 1990) ......................................................... 35

Christian v. Mattel,
    286 F.3d 1118 (9th Cir. 2002) ...................................................... 21

Cooter & Gell v. Hartmarx Corp.,
    496 U.S. 384 (1990) ................................................................ 20

Donovan v. City of Dallas,
    84 S. Ct. 1579 (1964) .............................................................. 33

Estate of Spirtos v. One San Bernardino Cty. Superior Court Case,
    443 F.3d 1172 (9th Cir. 2006) ...................................................... 36

Eyak Native Village v. Exxon Corp.,
    25 F.3d 773 (9th Cir. 1994) ........................................................ 34

G.C. & K.B. Investments, Inc. v. Wilson,
    326 F.3d 1096 (9th Cir. 2003) ...................................................... 20

Golden Eagle Distrib. Corp. v. Burroughs Corp.,
    801 F.2d 1531 (9th Cir. 1986) ...................................................... 20

Heller v. Cepia L.L.C.,
    560 F. Appx. 678- (9th Cir. 2014) .................................................. 21

Herring v. F.D.I.C.,
    82 F.3d 282 (9th Cir. 1995) ................................................ 36, 37, 39

Holgate v. Baldwin,
    425 F.3d 671 (9th Cir. 2005) ....................................................... 21

Hsu v. Intel Corp.,
    8 F.3d 27 (9th Cir. 1993) .......................................................... 21

In re Grantham Bros.,
    922 F.2d 1438 (9th Cir. 1991) ...................................................... 21

In re Jess,
    169 F.3d 1204 (9th Cir. 1999) ...................................................... 35

In re Saylor,
    178 B.R. 209 (9th Cir. B.A.P. 1995) ................................................ 36

In re Schivo,
    462 B.R. 765 (Bankr. D. Nev. 2011) ........................................................ 21

In re Yan,
    649 Fed. Appx. 359 (9th Cir. 2016) ........................................................ 35

Mullane v. Cent. Hanover Bank & Tr. Co.,
    70 S. Ct. 652 (1950) ........................................................ 29

Newton v. Thomason,
    22 F.3d 1455 (9th Cir. 1994) ........................................................ 20

Proctor v. Vishay Intertechnology Inc.,
    584 F.3d 1208 (9th Cir. 2009) ........................................................ 34

Segal v. Rochelle,
    382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ........................................................ 35

Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Trust,
    244 F. Supp. 2d 1098 (D. Nev. 2003) ........................................................ 20

Smyth v. City of Oakland,
    329 B.R. 270 (9th Cir. BAP 2005) ........................................................ 21

Townsend v. Holman Consulting Corp.,
    929 F.2d 1358 (9th Cir. 1990) ........................................................ 20, 21

William Villa v. Heller,
    885 F. Supp. 2d 1042 (S.D. Cal. 2012) ........................................................ 20

Zaldivar v. City of Los Angeles,
    780 F.2d 823 (9th Cir. 1986) ........................................................ 20, 21

Statutes
11 U.S.C. § 541(a) ........................................................ 35
11 U.S.C. § 554(d) ........................................................ 36
11 U.S.C. § 105 ........................................................ passim
28 U.S.C. 1452(b) ........................................................ 15
28 U.S.C. § 157(b)(2)(A) and (O) ........................................................ 2
28 U.S.C. §§ 157 and 1334 ........................................................ 2
28 U.S.C. §§ 1334(c)(1) and/or (c)(2) ........................................................ 15
28 U.S.C. §§ 1408 and 1409 ........................................................ 3
Article III of the United States Constitution ........................................................ 3
NRS 38.226 ........................................................ 17, 23
NRS 38.239 ........................................................ 4, 23
Section 362(a) of the Bankruptcy Code ........................................................ 41
§ 105(a) ........................................................ 11

Rules

F.R.Bankr.P. 7065 ........................................................ 6, 11, 13, 14
Fed. R. Bankr. P. 9011 ........................................................ 20, 21, 20
Fed. R. Civ. P. 65(d)(2) ........................................................ 29
FRBP 7041 ........................................................ 9, 10
FRCP 11 ........................................................ 19, 20, 20

iv

FRCP 12 .......................................................................................................... 9, 25
FRCP 12(b)(6) ......................................................................................................... 17
FRCP 41(a)(1)(A) ......................................................................................... 9, 10, 17
FRCP 54(b) .............................................................................................................. 26
FRCP 60(b)(3) ......................................................................................................... 36
FRCP 60(d)(3); and (ii) .......................................................................................... 12
FRCP 65(d) .............................................................................................................. 29
NRCP 53 ........................................................................................................ 4, 17, 23
NRCP 60(b)(3); (3) ................................................................................................... 8
Rule 60(d)(3) ........................................................................................................... 10
Rule 65(d)(2)(A) or (B) .......................................................................................... 29

v

JH, Inc. ("<u>JH</u>"), Maryanna Herbst as Trustee of the Herbst Family Trust dated December 17, 2002 ("<u>Trust</u>"), and Berry-Hinckley Industries ("<u>BHI</u>" and together with JH and the Trust, the "<u>Herbst Parties</u>"), and Timothy P. Herbst, Troy D. Herbst, and Edward J. Herbst (together, the "<u>Additional Defendants</u>," and with the Herbst Parties, the "<u>Herbst Defendants</u>"), by and through their counsel, the law firm of Garman Turner Gordon LLP, hereby respectfully submit their motion (the "<u>Sanctions Motion</u>"), which requests that this Court enter an order awarding the fees and costs incurred by the Herbst Defendants as provided for in this Sanctions Motion.

This Sanctions Motion is made and based upon the following Memorandum of Points and Authorities, the declarations of Gerald M. Gordon, Esq. (the "<u>Gordon Declaration</u>") and John Desmond, Esq. (the "<u>Desmond Declaration</u>") filed herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is requested, and the argument of counsel at the time of the hearing of the Sanctions Motion.

## I.
## <u>INTRODUCTION</u>

Bankruptcy Rule[1] 9011 allows for the award of fees and costs as a sanction against an attorney when a pleading or paper is filed for an improper purpose, is frivolous, or its allegations do not have or are unlikely to have evidentiary support.  The filing and maintenance of the Rule 9011 Pleadings (as defined below) on behalf of Paul A. Morabito ("<u>Morabito</u>") by Jeffrey Hartman, Esq. and Hartman & Hartman (together, "<u>Hartman</u>") and David Houston, Esq. and The Law Offices of David R. Houston (together, "<u>Houston</u>") clearly meets the standards of Bankruptcy Rule 9011 and caused the Herbst Defendants substantial harm, including attorneys' fees, costs and other expenses.  And, there is simply no excuse for the conduct of Hartman and Houston, who either failed to conduct a reasonable and competent investigation of the history of the State Court Action (as defined below), the history of the Chapter 7 Case (as defined below) and Morabito's prior conduct before filing the Rule 9011 Pleadings, or chose to ignore that

---

[1] Unless otherwise stated, all references to "<u>Chapter</u>" or "<u>Section</u>" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "<u>FRCP</u>" shall be to the Federal Rules of Civil Procedure; all references to a "<u>Bankruptcy Rule</u>" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "<u>Local Rule</u>" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

1

history and filed the Rule 9011 Pleadings with knowledge that they were improper, frivolous and unsupported by evidence.

With specific knowledge of the prior proceedings regarding the 2016 Complaint, the 2017 Abandonment Order, the Order Denying Remand, Dismissal Notice, and the July 21 Letter (each defined below), and with access to the pleadings, orders and discovery in the litigation before Judge Adams in the State Court and the Nevada Supreme Court, Hartman and Houston solely and recklessly relied upon Morabito's fictitious, contradictory and unsubstantiated version of the facts, whether relevant or not.  Moreover, Hartman and Houston knew that Morabito is an adjudicated and admitted fraud, was found to have lied to this Court by this Court, which determination was affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit and Ninth Circuit of Appeals, and has submitted several false and misleading declarations (with at least one found as a sham) replete with hearsay and inadmissible and unsubstantiated statements to this Court.

Under the circumstances and given the seriousness of the false allegations and charges against the Herbst Defendants and their counsel, as set forth in the Rule 9011 Pleadings, the filing and prosecution of the Rule 9011 Pleadings by Hartman and Houston was without any evidentiary support, was for an improper purpose (to harass and frustrate and retaliate against the Herbst Defendants, their counsel and William A. Leonard, Jr., the trustee in the Chapter 7 Case), and was frivolous.  Accordingly, this Court should grant this Sanctions Motion and enter an award against Hartman and Houston for the fees and costs incurred by the Herbst Defendants in order to deter such conduct.

## II.
## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Sanctions Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.    Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The basis for the relief sought arises from Section 105 and Bankruptcy Rule 9011.

4.      Pursuant to Local Rule 9014.2, the Herbst Defendants consent to entry of final order(s) or judgment(s) by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III.
## BACKGROUND

A.      **The State Court Action.**

5.      JH and P.A. MORABITO & CO. Ltd. ("PAMCO"), the predecessor-in-interest to Consolidated Nevada Corporation ("CNC," and with Morabito, the "Morabito Parties"), entered into an *Amended and Restated Stock Purchase Agreement* dated June 28, 2007 ("ARSPA"), whereby JH agreed to purchase the stock of BHI from PAMCO.

6.      A dispute developed regarding the sale of the BHI stock to JH.  The Morabito Parties filed a lawsuit against the Herbst Parties on December 3, 2007 in Department 6 of the Second Judicial District Court in and for the County of Washoe (the "State Court"), Case No. CV07-02764 ("State Court Action").  The Herbst Parties filed numerous counterclaims against the Morabito Parties, including fraud in the inducement, misrepresentation, and breach of contract.

7.      The first substantive dispute that was litigated in the State Court Action was the issue of whether the Morabito Parties had correctly calculated BHI's working capital in the Closing Date Financial Report they created when selling BHI to JH. This dispute was characterized by the Morabito Parties desperately attempting to avoid resolution of that dispute, while the Herbst Parties attempted to move forward toward resolution.

8.      Pursuant to Section 2.5(d) of the ARSPA, the parties agreed that, in order to resolve disputes related to the Closing Date Financial Report, "Independent Accountants will promptly be retained to undertake a determination of the Closing Date Financial Report, which determination will be made as quickly as possible" and "will be final and binding on Seller and Buyer."  Attached hereto as **Exhibit 1** is the Herbst Parties' *Motion to Compel Consolidated Nevada Corp. and Paul Morabito to Comply with Section 2.5(d) of the ARPSA Regarding*

3

*Submission of Working Capital Dispute to an Independent Accountant* (the "Motion to Compel Compliance with ARSPA §2.5(d)").

9.      On January 28, 2008, the Herbst Parties filed the Motion to Compel Compliance with ARSPA §2.5(d).  See Exhibit 1 hereto.  The Morabito Parties opposed that Motion, and the State Court denied the Motion due to the parties' dispute as to whether the perquisites to the enforceability of ARSPA §2.5(d) have occurred.  Attached hereto as **Exhibit 2** is the Order denying the Motion to Compel Compliance with ARSPA §2.5(d).

10.     The Herbst Parties then filed a *Motion for Reconsideration of the Order Denying Motion to Compel Independent Accounting* (the "Motion for Reconsideration").  Attached hereto as **Exhibit 3** is the May 2, 2008 Motion for Reconsideration.  After the Morabito Parties again filed an opposition, the State Court granted the Motion for Reconsideration and stayed the State Court Action pending the parties' compliance with ARSPA §2.5(d).  Attached hereto as **Exhibit 4** is the *Order* granting the Motion for Reconsideration.

11.     Pursuant to ARSPA §2.5(d) and NRCP 53, the State Court eventually appointed an independent accounting firm, Douglas Wilson Companies, as an arbitrator (the "Ind-CPA") to independently calculate BHI's closing date working capital.  Attached hereto as **Exhibit 5** is the *Order Appointing Independent Accountants*.

12.     On August 12, 2009, the State Court issued an order (the "Working Capital Order") denying the Morabito Parties' motion to disqualify the Ind-CPA and confirming the Ind-CPA report (the "Ind-CPA Report").  Attached hereto as **Exhibits 6 and 7** are the Working Capital Order and Ind-CPA Report, respectively.

13.     On August 19, 2009, the Morabito Parties filed a *Notice of Appeal* to the Nevada Supreme Court being Appeal #54412.  The issues on appeal included the Working Capital Order.  Attached hereto as **Exhibit 8** is the Notice of Appeal.  As stated in the Notice of Appeal, "[t]his is an appeal of the order pursuant to NRS 38.239 confirming the independent accountants' determination and the order denying the appointment of a receiver."  See Notice of Appeal, p. 4, ¶ 10.

14.    On August 15, 2010, Lewis and Roca filed for Morabito *Appellants'/Cross-Respondents' Opening Brief*.  The issues presented in the opening brief revolved around the assertion that the State Court erred by confirming the Ind-CPA Report due to the arbitrator's alleged misconduct and ex parte communications with the Herbst Parties and their counsel and advisors and alleged misconduct on the part of the Herbst Parties and their counsel and advisors.  See Opening Brief attached hereto as **Exhibit 9.**

15.    The law firm of Robison, Belaustegui, Sharp & Low ("Robison") was substituted in as counsel of record for Morabito in Appeal #54412 on December 1, 2011.  See Substitution of Attorneys and Notice of Dismissal of Appeal, filed December 5, 2011, and attached to hereto as **Exhibit 10**.

16.    The State Court Action was tried before Judge Brent Adams by way of a bench trial commencing May 10, 2010 and lasted several weeks.

17.    On October 12, 2010, the State Court entered findings of fact and conclusions of law (the "State Court FF&CL") in the State Court Action, which specifically set forth the legal and factual basis for judgment against the Morabito Parties for fraud in the inducement.

18.    The State Court entered a judgment awarding the Herbst Parties total damages of $149,444,777.80 (the "State Court Judgment") on August 23, 2011.

19.    Both prior to and subsequent to the entry of the State Court Judgment, Morabito filed appeals with and sought writs of mandamus from the Nevada Supreme Court and the Herbst Parties filed cross-appeals ("Appeals").  These included appeals #57943, #57944 and #59138, which were all consolidated for all appellate purposes under #59138.

20.    While Morabito was represented by Leif Reid, Esq. and the law firm of Lewis & Roca during the trial in the State Court Action, Robison was associated as counsel of record for Morabito in the State Court Action on February 14, 2011.  Attached hereto as **Exhibit 11** is the association of counsel.  However, as early as February 22, 2010, Lippes Mathias Wexler Friedman LLP ("Lippes") was representing Morabito with regard to the State Court Action.  Attached hereto as **Exhibit 12** is a letter authorized by Dennis Vacco on behalf of the Morabito Parties.

21.     Appeals #57943 and #57944 were commenced on March 8, 2011, by Robison and Lippes on behalf of Morabito with the filing of two *Notices of Appeal* with the Nevada Supreme Court from an order entered on February 9, 2011, by the State Court denying Morabito's *Motion for a New Trial and/or to Alter or Amend the Judgment entered on February 9, 2011*.  These Notices of Appeal commenced Appeals #57943 and #57944.  See Notice of Appeal attached hereto as **Exhibit 13**.

22.     Appeal #59138 was commenced on September 7, 2011, with Robison and Lippes filing on behalf of Morabito a *Notice of Appeal* from the State Court Judgment.  See Notice of Appeal attached hereto as **Exhibit 14**.

23.     On August 26, 2011, on behalf of Morabito, Robison and Lippes filed an *Emergency Petition for Writ of Mandamus* (the "Petition").  The Petition was ultimately denied by the Nevada Supreme Court, but in support of the Petition, Robison and Lippes filed Petitioners' Appendix Volume 2 (Pages 1-235) on August 26, 2011.  See **Exhibit 15** hereto for the Appendix.  At page 50 of the Appendix is attached the October 1, 2009 Order (defined below).  The October 1, 2009 Order is Exhibit 1 to the *Motion for Stay of Proceedings Pursuant to 11 U.S.C.§ 105 and F.R.Bankr.P. 7065* [ECF No. 3 in Adv. Pro. No. 20-05002-GWZ] (the "Stay Motion") (as the first of four "In Limine Orders") and is further referenced in the *Declaration of Paul Morabito in Support of Reply to Oppositions to Motion For Remand of Removed Proceeding* [ECF No. 24 in Adv. Pro. No. 20-05003-GWZ] (the "Second Morabito Declaration").

**B.     The Settlement Agreement and Default of the Settlement Agreement.**

24.     The parties, with the advice of counsel, agreed to settle the State Court Action and, on November 30, 2011, executed the *Settlement Agreement* (the "Settlement Agreement"). Robison represented Morabito with regard to the Settlement Agreement.  See Settlement Agreement, p. 25, attached hereto as **Exhibit 16.**

25.     As part of the Settlement Agreement, Morabito also agreed to execute a confession of judgment for $85,000,000 (the "Confession of Judgment").

6

26.     The Confession of Judgment mirrored the fraud findings and conclusions of the vacated State Court FF&CL, and Morabito expressly, stipulated, acknowledged, and verified as true the findings of fraud in the Confession of Judgment (the "Stipulation of Facts").

27.     Pursuant to the Settlement Agreement, the Appeals were subsequently vacated, as were the State Court Judgment and the State Court FF&CL.  As defined in the Settlement Agreement, "Appeals" included #57943, #57944 and #54412.  See id., p. 2, ¶ G.

28.     The Settlement Agreement also defined "Action" as the State Court Action, including all claims and counterclaims.  See id., p. 2, ¶ E.

29.     The Settlement Agreement specifically provided with regard to the Appeals and Action that all claims set forth in the Action and Appeals, whether filed by the Morabito Parties or the Herbst Parties, were hereby deemed completely and finally resolved.

**C.     Morabito's Default and the Confession of Judgment.**

30.     Morabito defaulted under Settlement Agreement when he failed to timely comply with the terms of the Settlement Agreement, including timely paying the Herbst Parties.

31.     As a result of Morabito's breach, the Herbst Parties filed the *Confession of Judgment* on June 18, 2013 in the State Court Action.

**D.     The Chapter 7 Case and the Nondischarge Action.**

32.     On June 20, 2013, the Herbst Parties filed an involuntary petition for relief under Chapter 7 [ECF No. 1 in BK-N-13-51237-GWZ] (the "Chapter 7 Case"), thereby commencing a Chapter 7 involuntary proceeding against Morabito.  At the same time, the Herbst Parties filed an involuntary petition for relief under Chapter 7 against CNC [ECF No. 1 in BK-N-13-51236-GWZ] (the "CNC Chapter 7 Case" and together with the Chapter 7 Case, the "Chapter 7 Cases").

33.     On December 22, 2014, the Court entered its *Amended Order for Relief Under Chapter 7* [ECF No. 168 in Chapter 7 Case] in the Chapter 7 Case and its *Order for Relief Under Chapter 7* [ECF No. 59 in CNC Chapter 7 Case] in the CNC Chapter 7 Case.

34.     On March 20, 2015, the Herbst Parties timely filed their complaint objecting to Morabito's discharge under Section 523(a)(2), commencing Adversary Case No. 15-05019-gwz (the "Nondischarge Action").

7

35.     On April 30, 2018, this Court awarded the Herbst Parties a nondischargeable judgment for $85,000,000 less amounts paid by Morabito (the "Nondischarge Judgment").  The Nondischarge Judgment was affirmed by the Nevada District Court and the Ninth Circuit Court of Appeals (the "Ninth Circuit").

**E.      The 2016 Fraud on the Court Complaint and its Removal to the Bankruptcy Court.**

36.     On December 16, 2016, the Morabito Parties filed their *Complaint* (the "2016 Complaint") in the State Court, denominated Case No. CV16-02571.  In the 2016 Complaint, the Morabito Parties averred causes of action for: (1) Fraud on the Court; (2) NRCP 60(b)(3); (3) Fraudulent Inducement; and (4) Fraudulent Misrepresentation (collectively, the "2016 Claims"). The alleged basis of the 2016 Claims was that the Herbst Parties defrauded the Morabito Parties, the Ind-CPA, and the State Court, which resulted in the State Court Judgment, the Confession of Judgment, the Chapter 7 Cases, and the Nondischarge Judgment.

37.     The 2016 Complaint was removed to this Court by the Herbst Parties on December 23, 2016.  See ECF No. 1 in 16-05043-GWZ.

**F.      The Standing Motion and Abandonment Order.**

38.     On December 28, 2016, the Morabito Parties filed a motion requesting authority to file and prosecute the 2016 Claims on behalf of the estates, or alternatively compel abandonment of the 2016 Claims (the "Standing/Abandonment Motion").  See ECF No. 741 in the Chapter 7 Case.

39.     The Morabito Parties acknowledged that all the 2016 Claims in the 2016 Complaint may be brought by William A. Leonard, Jr., chapter 7 trustee (the "Trustee").  See ECF No. 741 in the Chapter 7 Case.

40.     On June 23, 2017, this Court entered findings and conclusions denying the Standing/Abandonment Motion [ECF No. 873 in the Chapter 7 Case] (the "Abandonment FF&CL") and an order denying the Standing/Abandonment Motion (the "Abandonment Order"). See ECF No. 874 in the Chapter 7 Case.

41.     This Court found in its Abandonment FF&CL that the 2016 Claims were estate claims, void, time-barred and not colorable or plausible, could not survive a motion to dismiss

pursuant to FRCP 12, and denied the Morabito Parties' request for standing or an abandonment of the 2016 Claims.

42.    The Morabito Parties appealed the Abandonment Order to the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals (the "BAP").  A panel of the BAP found no error in the Abandonment Order.  See ECF No. 935 in the Chapter 7 Case.

43.    On September 4, 2019, the Abandonment Order was also affirmed by the Ninth Circuit.  See ECF No. 1046 in the Chapter 7 Case.

**G.    The Order Denying Remand and Dismissal Notice.**

44.    On January 20, 2017, the Morabito Parties filed their *Motion for Remand of Removed Proceeding* (the "2017 Remand Motion") requesting that this Court remand the 2016 Complaint to the State Court.  See ECF No. 7 in 16-05043-GWZ.

45.    This Court denied the Remand Motion (the "Order Denying Remand").  See ECF No. 58 in 16-05043-GWZ.  In the Order Denying Remand, this Court also ordered that:

> 2. The Trustee may file a Notice of Dismissal of this Adversary Proceeding with prejudice in accordance with the provisions of FRBP 7041 and FRCP 41(a)(1)(A) incorporated thereby.
>
> 3. As clarified on the record at the hearing, the Court has not made a finding as to whether the Plaintiffs have independent standing apart from the estate to bring claims against the Defendants based upon the allegations of the Complaint.
>
> 4. Thus, any other claims belonging to the Plaintiffs and not to the bankruptcy estates and not asserted in the Complaint are not before the Court in this Adversary Proceeding and are not affected by this Order ….

See Order Denying Remand, ¶¶ 2-4.

46.    On October 3, 2017, the Trustee filed a *Notice of Dismissal with Prejudice* (the "Dismissal Notice"), thereby dismissing the 2016 Complaint with prejudice pursuant to Bankruptcy Rule 7041 and FRCP 41(a)(1)(A).  See ECF No. 59 in 16-05043-GWZ.

47.    The Morabito Parties appealed the Order Denying Remand and Dismissal Notice to the BAP.  The BAP found no error.  See ECF No. 86 in 16-05043-GWZ.

48.    On September 4, 2019, the Order Denying Remand and Dismissal Notice were also affirmed by the Ninth Circuit.  See ECF No. 90 in 16-05043-GWZ.

9

**H.    The 60(d)(3) Motion Filed in the Vacated State Court Action.**

49.    On January 31, 2020, days prior to the hearing in which this Court stated it would determine whether Morabito should be further sanctioned, including incarceration, for his continued contempt of this Court's orders, Morabito filed his *Independent Motion Under Rule 60(d)(3) Seeking Declaratory Relief and Request for Leave to File Motion in Excess of Page Limitation* (the "60(d)(3) Motion") in the State Court Action.  The 60(d)(3) Motion was prepared and/or reviewed and filed on behalf of Morabito by Houston and Hartman.

50.    Without leave to amend, Morabito removed CNC and Jerry Herbst as parties to the State Court Action and added Maryanna Herbst as Trustee of the Herbst Family Trust dated December 17, 2002 and the Additional Defendants as defendants.

51.    The 60(d)(3) Motion requested that the State Court grant declaratory relief providing for all of the following: (i) a judgment setting aside and vacating the Confession of Judgment action, and setting aside and vacating the Settlement Agreement, and setting aside and vacating the Confession of Judgment, and setting aside such other adverse orders derived from the Confession of Judgment action including but not limited granting declaratory relief under Rule 60(d)(3); (ii) to have the State Court take such additional action as may be necessary and appropriate to affect a complete denial of relief to "Defendants" and/or the Trustee in all pending civil and bankruptcy actions including but not limited to the judgment entered by Judge Steinheimer in the Superpumper Litigation, Nondischarge Judgment, the Abandonment Order and any Trustee Adversaries resulting from the Confession of Judgment action and the Chapter 7 Cases;[2] (iii) to take such action as the State Court deems necessary against those persons whose fraud and flagrant disregard for the law defiles the State Court; and (iv) since the Confessed Judgment action must be vacated, the State Court Case would then stand in the same position as though "Defendant's" corruption had been exposed at the trial.  See 60(d)(3) Motion, pp. 73-74.

…

…

---

[2] The Trustee is not a named party to the 60(d)(3) Motion.

10

**I.      Removal of the 60(d)(3) Motion.**

52.      On February 6, 2020, the Herbst Defendants removed the 60(d)(3) Motion by filing their *Notice of Removal* [ECF No. 1070 in Chapter 7 Case] (the "<u>Notice of Removal</u>").

53.      On February 7, 2020, the Trustee filed the *Statement of William A. Leonard, Jr., Chapter 7 Trustee Re Notice of Removal* [ECF No. 4 in Adv. Pro. No. 20-05003-GWZ], in which he stated that: (i) he concurs and supports the Notice of Removal; and (ii) by the 60(d)(3) Motion, Morabito violated the automatic stay of Section 362 in several ways, such that it must not be remanded to the State Court.

**J.      The Injunction Complaint.**

54.      On January 31, 2020, Morabito filed the *Complaint for Declaratory Judgment; Request for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C.§ 105 and F.R.Bankr.P. 7065 and 9024* (the "<u>Injunction Complaint</u>").  <u>See</u> ECF No. 1068 in Chapter 7 Case and ECF No. 1 in Adv Pro No. 20-05002-GWZ.

55.      The first cause of action in the Injunction Complaint is for "Declaratory Determination," which requests "a declaratory determination by the Court that the [Nondischarge Judgment] and the Abandonment Order were obtained as a result of fraud upon the Court in the State Court Action as well as fraud upon this Court."  <u>See</u> Injunction Complaint, ¶¶ 157-58.

56.      The second cause of action in the Injunction Complaint is for injunctive relief, and requests "[a]n injunction pursuant to § 105(a) and F.R.Bankr.P. 7065 staying activity in all the [Trustee Adversaries] as well as in [the Nondischarge Action], pending a determination [on the 60(d)(3) Motion] by Judge Freeman in CV07-02764 … "  <u>See</u> <u>id.</u>, p. 21.

57.      Thus, Morabito seeks in the Injunction Complaint: (i) a judgment for declaratory relief that the Abandonment Order and Nondischarge Judgment were obtained by fraud pursuant to FRCP 60(d)(3); and (ii) an injunction enjoining the Trustee Adversaries and Nondischarge Action pending resolution of the 60(d)(3) Motion by the State Court.

58.      The material allegations averred in the Injunction Complaint with respect to the request for declaratory relief that the Abandonment Order and the Nondischarge Judgment were obtained by fraud are:

56. The Bankruptcy Court was misled and defrauded by the Herbst Parties through their attorneys John Desmond and Gerald Gordon: the Ind-CPA Report was set aside by In Limine Orders in 2009 and 2010 prior to the State Court Trial. The Ind-CPA's Working Capital Order was not considered or litigated by the State Court.

57. In the main case as well as in both Adv. 15-05019 and Adv. 16-05043, Gordon misled the Court intentionally, aware that Plaintiff's then counsel did not have access to the sealed 2010 State Court transcripts.

58. Gordon doubled down on his reliance of the factual ignorance of the Court and opposite counsel by sending a July 21, 2017 letter to Plaintiff's Counsel demanding $140,000 in legal fees including $42,000 for Desmond. Gordon asserted that the Ind-CPA was never set aside. This is false. Gerald Gordon wrote (Pg. 7 of the July 21, 2017 letter): "Contrary to Morabito's unsupported allegation, no portion of the I.A.'s Report was ever set aside or discounted by the State Court."

59. This Court relied on the validity of the Ind-CPA findings (Abandonment Order §7- 11; 13, 44, 47-50, 52 & 80) and Working Capital Order (Abandonment Order §13 & 14) in making his Abandonment Order.

60. The Abandonment Order is premised on the State Court's reliance on the Ind-CPA, and its Working Capital Order, which was vacated and sealed State Court record, rendering it inaccessible to Plaintiffs' counsel.

…

104. Defendants had carried the scheme of fraud upon the court from the State Court into this court. In August 2019, Gordon submitted manufactured BHI 2006 Check Register to Plaintiff's counsel seeking to have the U.S. Trustee seize $125,000 in deposits with the Nevada Gaming Control Board that Gordon claims belongs to BHI.

105. On August 22, 2019, Gordon sent an email to Plaintiff's counsel attaching a purported BHI Check Register dated September 22, 2006 showing "legal and accounting" entries for a six-month period and a $125,000 check dated June 13, 2006 from BHI to the NGCB.

…

112. The re-created BHI financials, fraudulently manufactured by Wood and now used by Gordon in the bankruptcy action is a direct continuance of the scheme to manipulate the proper unbiased and impartial administration of justice.

113. Gordon's 2019 release of the fraudulent check registry is further clear and convincing evidence that Wood fraudulently re-created certain BHI financial statements.

…

135. In 2017, the fraud upon the courts continued unabated. The Abandonment Order relied on the 2010 State Court independent accountant ("Ind-CPA") and the Greene Report. The Bankruptcy Court was misled by John Desmond and Gerald

Gordon, as the State Court Judge had issued four In Limine Orders, pre-trial, regarding the Ind-CPA Working Capital Order as matters that would not be litigated by the State Court due to the Nevada Supreme Court Appeal against the Ind-CPA Working Capital Order.

…

140. Judge Adams had the same good faith reliance as this Court had of Gordon.

Injunction Complaint, ¶¶ 56-60, 104-105, 112-113, 135, and 140.

59.    The Injunction Complaint was prepared and/or reviewed and filed by Houston and Hartman as counsel for Morabito.

60.    In Response to the Injunction Complaint, the Herbst Parties have filed on March 27, 2020 their *Motion to Dismiss Complaint for Declaratory Judgment; for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and 9024* [ECF No. 25 in Adv. Pro. No. 20-05002-GWZ] (the "Dismissal Motion"), the *Declaration of Mark M Weisenmiller, Esq. in Support of Motion to Dismiss Complaint for Declaratory Judgment; for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and 9024* [ECF No. 27 in Adv. Pro. No. 20-05002-GWZ] (the "Weisenmiller Dismissal Declaration"), and the *Declaration of John P. Desmond in Support of Motion to Dismiss Complaint for Declaratory Judgment; for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and 9024* [ECF No. 28 in Adv. Pro. No. 20-05002-GWZ] (the "Desmond Dismissal Declaration," and with the Dismissal Motion and the Weisenmiller Dismissal Declaration, the "Dismissal Motion Pleadings").

**K.    The Stay Motion.**

61.    On January 31, 2020, Morabito also filed the Stay Motion [ECF No. 3 in Adv. Pro. No. 20-05002-GWZ]. The Stay Motion was accompanied by the *Declaration of Paul A. Morabito in Support of Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 4 in Adv. Pro. No. 20-05002-GWZ] (the "Morabito Stay Declaration," and with the Stay Motion, the "Stay Motion Pleadings"). The Stay Motion Pleadings were prepared and/or reviewed and filed by Houston and Hartman as counsel for Morabito.

13

62.     Attached to the Stay Motion as Exhibit 2 is a true and correct copy of a letter dated July 21, 2017 (the "July 21 Letter") from Gerald M. Gordon, Esq. as counsel for the Herbst Parties to Morabito's then counsel, Robison and David Shemano, regarding the 2016 Complaint and related proceedings.   However, Exhibit 2 to the Stay Motion does not contain the approximate 800 pages of documentation attached to and referenced in the July 21 Letter.   The July 21 Letter sets forth the investigation and due diligence conducted by the Herbst Parties regarding the allegations and 2016 Claims of the 2016 Complaint, which facts and conclusions were not previously provided to this Court because of this Court's application of the Bankruptcy Rule 7012(b)(6) standards to the Standing/Abandonment Motion, 2017 Remand Motion, and the 2016 Complaint.

63.     In in response to the Stay Motion Pleadings, the Herbst Parties filed their *Response to Ex Parte Motion for Order Shortening Time for Hearing on Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 8 in Adv. Pro. No. 20-05002-GWZ] (the "OST Opposition") and their *Opposition to Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 32 in Adv. Pro. No. 20-05002-GWZ] (the "Stay Opposition" and together with the OST Opposition, the "Stay Motion Oppositions").

**L.     Morabito's Remand Motions.**

64.     On February 11, 2020, Morabito filed the *Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 5 in Adv. Pro. No. 20-05003-GWZ] (the "First Remand Motion"), which seeks an order remanding the 60(d)(3) Motion to the vacated State Court Action pursuant to 28 U.S.C. 1452(b) or abstaining from hearing it under 28 U.S.C. §§ 1334(c)(1) and/or (c)(2).  See Remand Motion, pp. 3 & 7.

65.     In addition to the Remand Motion, Morabito filed: (i) *Declaration of Paul Morabito in Support of Reply to Objections to Request for Order Shortening Time for Hearing on Motion for Remand of Removed Proceeding: Request for Abstention* [ECF No. 12 in Adv. Pro. No. 20-05003-GWZ] ("First Morabito Declaration"); (ii) *Amended Motion for Remand of Removed Proceedings: Request for Abstention* [ECF No. 15 in Adv. Pro. No. 20-05003-GWZ]

14

(the "Amended Remand Motion," and together with the First Remand Motion, the "Remand Motions"); (iii) *Reply to Oppositions to Amended Motion For Remand of Removed Proceedings: Request for Abstention* [ECF No. 23 in Adv. Pro. No. 20-05003-GWZ] (the "Remand Motion Reply"); and (iv) the Second Morabito Declaration.  The Second Morabito Declaration is referred with the Remand Motions and First Morabito Declaration as the "Remand Motion Pleadings."

66.    In the Amended Remand Motion, Morabito stated that "[t]he material facts supporting an intentional scheme to perpetrate the fraud upon the court addressed in the [60(d)(3) Motion], all occurred prior to the petition date of June 20, 2013."  See Amended Remand Motion, p. 2.  See also id., p. 8 ("the acts giving rise to the initial fraud on the court all occurred prior to June 20, 2013, the date of the involuntary petition against Morabito.").

67.    Morabito also stated in the Amended Remand Motion that:

The Notice of Removal [ECF No. 1 in 20-05003-GWZ], asserts "without leave of the State Court, Morabito deleted CNC and Jerry Herbst as parties, and added the Trust and Additional Defendants as defendants. ***The Rule 60(d)(3) Motion is a separate individual claim by Morabito seeking declaratory relief from fraud upon the court identifying only individual claims.*** Morabito is asserting his own legal rights and not the legal rights of others – he is not asserting rights of CNC.

Amended Remand Motion, p. 3 (emphasis added).

68.    Additionally, Morabito stated in the Amended Remand Motion that:

It was never Morabito's intention to suggest that the State Court could direct the Bankruptcy Court as to any matter. Following remand, Morabito will amend the Rule 60(d)(3) Motion to eliminate the following provision from the prayer for relief:

The Plaintiffs seeks to have this Court take such additional action as may be necessary and appropriate to effect a complete denial of relief to Defendants and/or the U.S. Bankruptcy Trustee William A. Leonard, Jr. in all pending civil and bankruptcy actions including but not limited to the [Nondischarge Judgment], the Abandonment Order and any adversarial matters in State or Federal Courts resulting from the Confessed Judgment Action and the U.S. Bankruptcy involuntary petitions of Plaintiff and of CNC.
…
In the event the State Court granted the requested relief, Morabito will seek to have this Court take such additional action as may be necessary and appropriate.

15

Id., pp. 9-10.

69.    The Remand Motion Pleadings were prepared and/or reviewed and filed by Houston and Hartman as counsel for Morabito.

70.    In response to the Remand Motion Pleadings, the Herbst Parties caused to be prepared and filed their: (i) *Opposition to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 20 in Adv. Pro. No. 20-05003-GWZ] (the "Remand Opposition"); (ii) *Sur Reply to Reply to Oppositions to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 27 in Adv. Pro. No. 20-05003-GWZ] (the "Sur Reply"); and (iii) *Declaration of John P. Desmond, Esq. in Support of Sur Reply to Reply to Oppositions to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 28 in Adv. Pro. No. 20-05003-GWZ] (the "Desmond Sur Reply Declaration," and together with the Remand Opposition and Sur Reply, the "Remand Motion Oppositions," and together with the Notice of Removal, 60(d)(3) Motion, Injunction Complaint, Dismissal Motion Pleadings, Stay Motion Pleadings, Stay Motion Oppositions, the Remand Motion Pleadings and such other related pleadings and papers, the "Material Pleadings").

**M.    Hartman's and Houston's Conduct and Rule 9011 Demand.**

71.    Hartman and Houston were aware of the July 21 Letter and the attachments thereto regarding the events which transpired with regard to the 2016 Complaint, 2017 Abandonment Order, Order Denying Remand and Dismissal Notice prior to the filing of the 60(d)(3) Motion, Injunction Complaint, Stay Motion Pleadings and Remand Motion Pleadings (together, the "Rule 9011 Pleadings"), including but not limited to:

   i.      The 2016 Complaint was removed to the Bankruptcy Court by the Herbst Parties on December 23, 2017, because the claims asserted in the 2016 Complaint were estate property to which Morabito had no standing or authority to commence or prosecute.

   ii.     On June 23, 2017, the Bankruptcy Court held in its Abandonment Order that the 2016 Complaint averred claims that: (i) were property of the estates of the Debtors; (ii) were without merit; (iii) were not plausible (and could not withstand a FRCP 12(b)(6) motion); (iv) were not colorable; (v) Morabito lacked standing to commence; (vi) were time-barred; (vii) were not subject to abandonment; and (viii) were subject to dismissal by the Trustee.

16

iii.    On September 14, 2017, the Bankruptcy Court held in its Order Denying Remand that: (i) the 2017 Remand Motion was denied, and (ii) the Trustee was authorized to file a notice of dismissal of the 2016 Complaint adversary proceeding with prejudice in accordance with the provisions of Bankruptcy Rule 7041 and FRCP 41(a)(1)(A).

iv.    Subsequent to the entry of the Abandonment Order, the Order Denying Remand and the dismissal of the removed 2016 Complaint by the Trustee, Morabito appealed the orders and dismissal to the BAP and, after affirmation of the decisions by the BAP, to the Ninth Circuit, which on September 4, 2019, affirmed the 2017 Remand Order, dismissal of the 2016 Complaint, and Abandonment Order.

72.    When Hartman and Houston prepared and/or reviewed, signed and filed the Rule 9011 Pleadings, they knew full well or should have known after investigation and due diligence that: (i) the facts alleged and asserted by Morabito in the Rule 9011 Pleadings regarding the history of the litigation between the Herbst Defendants and Morabito did not have and could not have any evidentiary support; (ii) the so-called "In Limine Orders" on their face did not support the allegations in the Rule 9011 Pleadings and that Morabito's counsel, including Robison and Lippes, had copies of the "Limine Orders"; (iii) the statement that the working capital dispute was not litigated in the State Court was false since that issue was fully-litigated before the Ind-CPA, who was appointed by the State Court expressly to adjudicate that issue pursuant to the ARSPA §2.5(d), NRS 38.226 and NRCP 53, and whose determination was subsequently confirmed by the State Court; (iv) the charges that Mr. Desmond and Mr. Gordon committed fraud upon the courts (as applicable, the State Court or the Bankruptcy Court) were frivolous, not supported by any evidence, were retaliatory on the part of Morabito and not supported and warranted by existing law; (v) in order to seek the relief sought against the Trustee in the 60(d)(3) Motion, the Injunction Complaint and Stay Motion, they were required to include the Trustee as an indispensable party; (vi) the State Court cannot enjoin and set aside orders, proceedings and actions of this Court; (vii) Nevada claims preclusion law barred Morabito seeking declaratory relief in the 60(d)(3) Motion and Injunction Complaint; and (viii) Morabito's newest rendition of the alleged fraud upon Judge Adams has morphed from the Working Capital Order being the "heart of the case" and the fraudulent conduct of the Herbst Parties and their

experts (for which Mr. Dwelle was to be a key supporting witness) to now the Working Capital Order never having been litigated or considered by Judge Adams and the fraud being perpetrated by Mr. Dwelle and opportunistically used by the Herbst Defendants for their benefit.

73.    On April 2, 2020, Mr. Gordon on behalf of the Herbst Defendants caused to be prepared and delivered to Hartman and Houston a letter pursuant to Bankruptcy Rule 9011 and Section 105 with regard to the Rule 9011 Pleadings (the "Rule 9011 Letter").  The Rule 9011 Letter is attached hereto as **Exhibit 17**.

74.    The Rule 9011 Letter demanded, consistent with Bankruptcy Rule 9011, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, within 21 days of receipt of the Rule 9011 Letter.  Hartman and Houston have failed to comply with the demands for withdrawal and dismissal set forth in the Rule 9011 Letter.

75.    In response to the Rule 9011 Letter, Houston and Hartmann delivered to Herbst Defendants' counsel a letter dated April 23, 2020 (the "Response Letter"), which is attached hereto as **Exhibit 18**.  The Response Letter simply regurgitates the allegations in the Rule 9011 Pleadings providing no explanation regarding their actions as counsel for Morabito.

76.    The Herbst Defendants served Hartman and Houston with a draft of this Sanctions Motion on May 1, 2020, together with the exhibits, and demanded, consistent with Bankruptcy Rule 9011 and the Rule 9011 Letter, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, all within 21 days of receipt of this Sanctions Motion.  However, Hartman and Houston refused to comply with the demands for withdrawal and dismissal.  Thus, the filing of this Sanctions Motion was necessary.

…

…

…

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.
## RELIEF REQUESTED

The Herbst Defendants seek an award of fees and costs from Hartman and Houston, jointly and severally, as a sanction pursuant to Bankruptcy Rule 9011. Specifically, the Herbst Defendants should be awarded the fees and costs they paid to Garman Turner Gordon LLP and Dickinson and Wright for services related to the Material Pleadings and all hearings and proceedings before the Court related thereto. The fees and costs incurred as of the date of filing this Sanctions Motion are set forth in the Gordon Declaration and Desmond Declaration, and the Herbst Defendants reserve the right to file additional declarations for fees and costs incurred subsequent to the filing of this Sanctions Motion through the hearing on this Sanctions Motion.

## V.
## LEGAL ARGUMENT

**A.**    **Generally Applicable Law.**

Bankruptcy Rule 9011[3] provides in pertinent part:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law…; [and]

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011. The United State Supreme Court found that "the central purpose of Fed. R. Civ. P. 11 is to deter baseless filings." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990); see also Newton v. Thomason, 22 F.3d 1455, 1463 (9th Cir. 1994).

"Sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is "frivolous." Townsend v. Holman Consulting Corp., 929

---

[3] Bankruptcy Rule 9011 is identical to FRCP 11.

F.2d 1358, 1362 (9th Cir. 1990) (citing Zaldivar v. City of Los Angeles, 780 F.2d 823, 832 (9th Cir. 1986) ("Frivolous" is shorthand for "a filing that is both baseless and made without a reasonable and competent inquiry."). "Either the improper purpose or frivolousness ground is sufficient to sustain a sanction." Townsend, 929 F.2d at 1362; William Villa v. Heller, 885 F. Supp. 2d 1042, 1054-55 (S.D. Cal. 2012).

A claim is frivolous when the court determines that the pleading is (1) not "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law"; and (2) when the attorney failed to make a reasonable and competent inquiry. Id. (citing Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir. 1986)); Townsend, 914 F.2d at 1140 (a claim is frivolous if it is "both baseless and made without a reasonable and competent inquiry."); Zaldivar, 780 F.2d at 831 (a frivolous claim is one that is "legally unreasonable, or without legal foundation.").

Under the first prong, the "trial court must examine the actual circumstances surrounding the case to determine whether the suspect claims were brought without reasonable grounds." Bergmann v. Boyce, 109 Nev. 670, 676-77, 856 P.2d 560, 564 (1993) (superseded by statute on other grounds). The reasonableness test is an objective test. Townsend, 929 F.2d at 1362. The attorney's subjective intent is not considered by the court. See G.C. & K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).

With respect to the second prong, "[a]n attorney has a duty prior to filing a complaint to conduct a reasonable factual investigation and perform adequate legal research to confirm whether the theoretical underpinnings of the complaint are warranted by existing law or a good faith argument for an extension, modification or reversal of existing law." Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Trust, 244 F. Supp. 2d 1098, 1102-03 (D. Nev. 2003) (quoting Christian v. Mattel, 286 F.3d 1118, 1127 (9th Cir. 2002)). The reasonableness of an attorney's conduct is measured against that "of a competent attorney admitted to practice before the involved court." See Smyth v. City of Oakland, 329 B.R. 270, 283 (9th Cir. BAP 2005); see also Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) ("The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after

20

conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."); <u>Townsend</u>, 929 F.2d at 1364 (finding that the inquiry is based on what was available to the attorney at the time); <u>Zaldivar</u>, 780 F.2d at 829–30. When an attorney fails to conduct a reasonable inquiry into the facts or law and thereafter files a pleading, it is sanctionable. <u>In re Schivo</u>, 462 B.R. 765, 778 (Bankr. D. Nev. 2011); <u>Townsend</u>, 929 F.2d at 1362.

Furthermore, all claims contained in an initial pleading need not be frivolous before the court can grant Bankruptcy Rule 9011 sanctions. <u>Heller v. Cepia L.L.C.</u>, 560 F. Appx. 678-679 (9th Cir. 2014) ("The presence of some supported allegations in a pleading does not necessarily shield from sanctions an attorney who also includes unsupported allegations.") (citing <u>Townsend</u>, 929 F.2d at 1363 (en banc) ("It would ill serve the purpose of deterrence to allow ... a 'safe harbor' for improper or unwarranted allegations.")); <u>Holgate v. Baldwin</u>, 425 F.3d 671, 677 (9th Cir. 2005) (awarding sanctions based on one frivolous claim without considering whether or not other claims were frivolous); <u>In re Grantham Bros.</u>, 922 F.2d 1438, 1442 (9th Cir. 1991) (confirming that "partially frivolous initial pleadings are subject to Rule 11 sanctions . . . ."); <u>Hsu v. Intel Corp.</u>, 8 F.3d 27 (9th Cir. 1993).

As detailed below, as well as in the Dismissal Motion Pleadings, Stay Motion Oppositions, Remand Motion Oppositions, and the Rule 9011 Letter, the Rule 9011 Pleadings are frivolous – not well grounded in fact, warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. This is clear given the history of the State Court Action and the Chapter 7 Case, the proceedings related to the 2016 Complaint, or even a cursory review of the filings, orders and judgments of the State Court and this Court (like the "Limine Orders," Abandonment Order, and Nondischarge Judgment) upon which Morabito materially relies in the 60(d)(3) Motion and Injunction Complaint.

Moreover, the Rule 9011 Pleadings were filed with the intent on the part of Morabito to frustrate and stall the Herbst Parties in their efforts to recover on the Nondischarge Judgment and enforce this Court's orders in the contempt proceedings regarding Morabito as well as the Trustee's efforts to recover assets of the estate from Edward Bayuk, Salvatore Morabito and

other related parties. This is best evidenced by Morabito seeking in the State Court to set aside this Court's various orders, including but not limited to the Orders for Relief and Nondischarge Judgment. How can Hartman and Houston possibly claim that they are not aware that one cannot collaterally attack federal court orders in state court and a state court cannot set aside federal court orders?

**B.      There is No Basis in Fact or Law Supporting the Rule 9011 Pleadings and Hartman and Houston Would Have Known That Had They Simply Read the Documents Attached to and/or Incorporated into the Rule 9011 Pleadings.**

As set forth in the Dismissal Motion Pleadings, Stay Motion Oppositions, and Remand Oppositions, the material allegations of the Rule 9011 Pleadings are contradicted by the documents attached to and/or incorporated into the Rule 9011 Pleadings. First, there is no basis in fact or law supporting Morabito's material allegations that the Ind-CPA Report was somehow set aside by In Limine Orders in 2009 and 2010 prior to the State Court Trial and that the Working Capital Order was not considered or litigated by the State Court. Had Hartman and Houston read the "In Limine Orders" they would have known that. The "In Limine Orders" contradict and in no way support these material allegations.

The October 1, 2009 order (the "October 1 Entry of Judgment Order") simply provided:

The Defendants/counter-claimants filed a proposed judgment.

***The Court has entered its order confirming the arbitration award.*** That order has been appealed to the Nevada Supreme Court.

***The Court finds that entry of judgment would be premature at this juncture given the appeal that is underway***, and that issues of fact remain outstanding, which might directly or indirectly impact the arbitration award.

Accordingly, the proposed judgment submitted by the Defendants/counter-claimants is hereby STAYED.

October 1 Entry of Judgment Order (emphasis added). Thus, the October 1 Entry of Judgment Order provides: (i) the State Court confirmed the Ind-CPA Report; and (ii) the Working Capital Order was on appeal to the Nevada Supreme Court. It contradicts Morabito's statement that the Ind-CPA Report and Working Capital Order were set aside by the State Court.

Pursuant to Section 2.5(d) of the ARSPA, NRS 38.226 and NRCP 53, the State Court

22

appointed the Ind-CPA to independently calculate BHI's closing date working capital. Morabito submitted CNC's Estimated Initial Working Capital to the Ind-CPA and played an active role while the Ind-CPA conducted his test work of the Closing Date Financial Report submitted to the Ind-CPA by BHI (the Herbst Parties). The Ind-CPA Report was lodged with the State Court on June 23, 2009 and approved in the Working Capital Order. See Exhibits 6 and 7 hereto. As such, Morabito's statement that the Ind-CPA Report and Working Capital Order were never litigated is incorrect. It is true that Judge Adams did not try the issue during the "State Court Trial," but that was only because the working capital dispute had already been fully-litigated before the Ind-CPA.

The Ind-CPA Report was then confirmed by the State Court pursuant to NRS 38.239 over Morabito's objections in the Working Capital Order, and the Working Capital Order was appealed by Morabito to the Nevada Supreme Court. See Exhibits 6-9 hereto. The October 1 Entry of Judgment Order simply provides that it was premature for the State Court to enter a *judgment* on the Working Capital Order while Morabito's appeal of the Working Capital Order was pending. The Working Capital Order (or at least the amount due thereunder) was included in the final State Court Judgment. See **Exhibit 19** [State Court FFCL, ¶¶ 34-59, 92-106] and **20** [State Court Judgment] hereto.

The State Court FF&CL and State Court Judgment make no mention of any adjustment or disallowance of any portion of the Ind-CPA Report or Working Capital Order, and the Ind-CPA Report and Working Capital Order were not amended to provide that the working capital dispute was any amount other than $6.8 million. In fact, the State Court included several findings that directly conflict with Morabito's statement in this regard.

The December 2, 2009 order (the "December 2 Order") provided the following:

Defendants/Counter claimants have filed a motion for final determination of open legal issues identified in the final report filed by independent accountants.

…

***The defendants have previous filed a motion to confirm the independent accountants determination as final and binding, a motion which this Court granted on August 12, 2009***. As such this current motion is procedurally improper, and untimely.

> Accordingly, the defendants/counterclaimants' motion for final determination of open legal issues identified in the final report filed by independent accountants is denied.

December 2 Order (emphasis added).  Thus, the December 2 Order provides that the State Court granted the motion to confirm the independent accountants' determination (the Ind-CPA Report and Working Capital Order) as final and binding.

The April 19, 2010 order (the "<u>April 19 SJM Order</u>") provided as follows:

> Defendant, J.H. Inc. has filed a motion for summary judgment as to plaintiffs' counts five, six and fifteen, related to working capital.
>
> ***The Court finds that the issues related to the working capital claims are currently under appeal. The Court therefore lacks the jurisdiction to entertain the present motion.***
>
> Accordingly, the defendants' motion for summary judgment as to plaintiffs' counts five, six and fifteen, related to working capital is denied.

April 19 SJM Order (emphasis added).  As such, the April 19 SJM Order does not support the allegations that the Ind-CPA Report was set aside by the In Limine Orders in 2009 and 2010 prior to the State Court Trial or that the Ind-CPA's Working Capital Order was not considered or litigated by the State Court.  The Ind-CPA Report was confirmed by Judge Adams in the Working Capital Order and was never disturbed in any way thereafter.

The April 19, 2010 order (the "<u>April 19 Order</u>," and with the October 1 Entry of Judgment Order, December 2 Order, and April 19 SJM Order, the "<u>In Limine Orders</u>") provided:

> Plaintiffs/Counter-Defendants have filed a motion to exclude expert testimony and report of Mr. Craig Greene.
>
> The Court finds that all the discovery obligations concerning the introduction of expert witness Craig L. Greene have been met.
>
> Accordingly, the plaintiffs/counter-defendants' motion to exclude expert testimony and report of Mr. Craig Greene is denied.

April 19 Order.  Consequently, each of the "In Limine Orders" contradict Morabito's material allegations that Ind-CPA Report was set aside by the In Limine Orders in 2009 and 2010 prior to the State Court Trial and that the Ind-CPA's Working Capital Order was not considered or

litigated by the State Court.  Had Hartman and Houston read the "In Limine Orders" they would have known that.

Second, there is no basis in law or fact for Morabito's material allegations that this Court relied upon the validity of the Ind-CPA findings and Working Capital Order in making the Abandonment Order, and had Hartman and Houston read the Abandonment Order they would also have known that.  These material allegations are contradicted by the plain text of the findings of fact and conclusions of law in support of the Abandonment Order [ECF No. 873] ("Abandonment FF&CL"), which were incorporated into the Injunction Complaint by Morabito's reference.

This Court did not rely upon the Ind-CPA Report or Working Capital Order in making the Abandonment Order; rather, this Court assumed all of the allegations of the 2016 Complaint were true [Abandonment FF&CL, ¶¶ 72, 76, & 82], and denied the request for standing to prosecute the 2016 Complaint or to abandon the 2016 Complaint because this Court found that the alleged 2016 Claims were not plausible or colorable, were time-barred, and could not survive a FRCP 12 motion [Abandonment FF&CL, ¶¶ 85, 92, 98, 100, & 110].  Again, had Hartman and Houston read the Abandonment Order they would have known that.

Third, there is no basis in law or fact for Morabito's material allegations that John Desmond and Gerald Gordon obtained the Abandonment Order and Nondischarge Judgment by defrauding this Court through their transmission of the BHI Check Register to Morabito's counsel, and had Hartman and Houston conducted a reasonable and competent investigation, they would have known that.  The dates that Morabito alleges the Herbst Parties provided the alleged manufactured BHI 2006 Check Register to his counsel are in August 2019, well after the Abandonment Order, Order Denying Remand, Dismissal Notice and Nondischarge Judgment, which were docketed on June 23, 2017, September 14, 2017, October 3, 2017 and April 30, 2018, respectively [ECF No. 873 in Chapter 7 Case, ECF Nos. 58 and 59 in 16-05043-GWZ, and ECF Nos. 122-124 in Nondischarge Action].  Because Morabito alleges that the BHI 2006 Check Register was sent to Morabito's counsel (not submitted to this Court) in 2019, Hartman and Houston should have known that the Abandonment Order and Nondischarge Judgment could not

have been affected by the alleged fraud and the claim of fraud was frivolous and retaliatory on the part of Morabito.

Fourth, there is no basis in law or fact for Morabito's material allegations that the Nondischarge Judgment was based upon the State Court Judgment or Confession of Judgment, and had Hartman and Houston read the documents incorporated into the Rule 9011 Pleadings they would have known that. This Court made it crystal clear that its Nondischarge Judgment was based upon the preclusive effect of the Confession of Judgment, the Stipulation of Facts *and* Morabito's fraudulent and duplicitous conduct inducing the Herbst Parties to agree to the Settlement Agreement and vacate their State Court Judgment for fraud.

In its Amended Findings of Fact and Conclusions of Law, this Court wrote that "[h]ere, the Court is not being asked to give preclusive effect to the [State Court Judgment] and the Court is not relying upon the findings in the [State Court FF&CL] for preclusive effect. Rather, the Herbst Parties are asking the Court to give preclusive effect to the [Confession of Judgment] and the Stipulation of facts in support of the [Confession of Judgment]."  See ECF No. 122, ¶ 54. Thus, the Nondischarge Judgment is not based upon the State Court Judgment.

Further, in its decision on the FRCP 54(b) motion, this Court explained the Nondischarge Judgment was not based solely upon the preclusive effect of the Confession of Judgment:

> *The evidence and testimony at the Trial reinforced the Court's fraud findings for the [Order Granting in Part and Denying in Part Motion for Summary Judgment [ECF No. 60] (the "Order")] and provided an additional basis for nondischargeability pursuant to Section 523(a)(2)(A) for entering a final judgment finding in favor of the Plaintiffs' on their First and Second causes of action as set forth in the Amended Findings of Fact and Conclusions of Law.*
>
> …
>
> Morabito induced the Herbst Parties to settle with him by executing the Confessed Judgment and verifying the facts contained therein. Without his execution of the Confessed Judgment and verification, he never would have obtained the consideration he was seeking; the vacatur. Morabito should not realize a benefit from his own duplicitous conduct. The agreed upon $85,000,000.00 obligation becomes nondischargeable due to his intentional misrepresentation regarding the truthfulness of the facts contained in the Confessed Judgment that he had to know that Plaintiffs were relying upon when they entered into the Settlement Agreement. Moreover, that reliance is further justifiable based upon the discovery done by the Herbst Parties during the punitive damage stage of the state court action, which is consistent with Morabito's own belief that he would be able to

26

perform in accord with the Settlement Agreement and the subsequent Forbearance Agreement.

…

At the Trial, Morabito testified that notwithstanding his admissions in the Confessed Judgment, entered into based upon his desire to have the state court judgment vacated, he does not believe those facts he affirmed to be true. ***Morabito's trial testimony is the equivalent of an admission that satisfied each of the elements for entry of a judgment of nondischargeability under § 523(a)(2)(A) and § 523(a)(2)(B)***.

…

The Court gave issue preclusive effect to the prepetition Confessed Judgment entered in state court as part of a settlement. The Court found that the Confessed Judgment deemed admitted the facts alleged in the state court complaint and found by the state court judge. As a result, Morabito admitted to each of the elements for a fraud-based judgment to be entered against Morabito under § 523(a)(2)(A), as detailed in its Amended Findings of Fact and Conclusions of Law.

Morabito made intentional misrepresentations regarding material facts, intending for the Herbst Parties to rely upon them. The Herbst Parties, as detailed herein, did not know when they entered into the Settlement Agreement and accepted the Confessed Judgment with the facts affirmed by Morabito, that Morabito would later attempt to disavow those facts. Morabito partially performed his obligations of the Settlement Agreement and also executed a subsequent Forbearance Agreement without attempting to rescind the facts had earlier affirmed. The Herbst Parties' reliance on Morabito's affirmed facts and the Confession of Judgment was subjectively justifiable and reasonable.

See ECF No. 124 in Nondischarge Action, pp. 2, 10, & 12-13 (emphasis added).

Moreover, in its December 20, 2018 oral ruling on the registration motion [ECF No. 165 in the Nondischarge Action], this Court held that the Nondischarge Judgment was not a declaration that the Confession of Judgment was nondischargeable, it is a separate federal money judgment:

So the [Nondischarge Judgment] goes beyond simply examining the confession of judgment to ensure that it complied with the requirements of the Nevada Supreme Court regarding issue preclusion. It also had to make certain determinations regarding Mr. Morabito's credibility and his attempt to disavow his verified admissions and facts that he provided to the Herbst parties and upon which they justifiably replied and which he, by his own conduct, attempted to comply with for approximately four years.

…

No matter how many times it's argued, the judgment that's being sought to be enforced is a judgment that was entered by this Court in April of this year and not the confession of judgment.

27

…

> And that may be, but as I've already indicated, I made determinations not limited to the confession of judgment or settlement agreement, but also to Mr. Morabito's claims that the facts that supported that confession of judgment were based upon his misrepresentations that he did not disclose for four years.

…

> I believe that the now plaintiffs, and I find that the plaintiffs, did ask for a money judgment and that I entered a money judgment. And while it's certainly related to, as requested by the Herbst parties to the confessed judgment and the proof of claim, it was not limited to that in terms of the debtor's conduct that resulted in the finding of nondischargeability because I had to make a determination whether or not that affirmed statement of facts should be utilized, and I did. I mean, that's why I find it's a separate money judgment.

> But even if that finding is incorrect, I still have the ability, according to the Ninth Circuit, to enforce my orders if I find that unusual circumstances exist. And I believe they do exist. No stay has been requested. There was no issue whether this was a money judgment or not until these enforcement proceedings were brought before the Court.

<u>See</u> **Exhibit 21** hereto, pp. 28-29, 35, 39, & 56.  On appeal, the District Court agreed.  <u>See</u> ECF No. 401 in Nondischarge Action, pp. 6 & 8.

Bottom line, had Hartman and Houston conducted even a cursory review of the filings, orders and judgments of the State Court and this Court upon which Morabito materially relies in the Rule 9011 Pleadings, they would have known the Rule 9011 Pleadings should not have been filed.

**C.    There is No Basis in Fact or Law Supporting the Rule 9011 Pleadings as to the Relief Sought Against the Trustee and Hartman and Houston Either Should Have Known Or Would Have Known That Had They Simply Conducted a Reasonable and Competent Inquiry of Applicable Law.**

Hartman and Houston did not name the Trustee as a defendant in the Injunction Complaint or add him a defendant in the 60(d)(3) Motion.  Nonetheless, they request that this Court in the Injunction Complaint and the State Court in the 60(d)(3) Motion enjoin and/or set aside the Trustee Adversaries.  A fundamental requirement of due process in seeking relief in a complaint is to name as a defendant the party against which the plaintiff is seeking relief.  The relief with respect to the Trustee Adversaries and Trustee violates due process and FRCP 65(d).  <u>See</u> <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 70 S. Ct. 652, 657 (1950) (holding that the

28

fundamental requirements of due process are notice and an opportunity to be heard); FED. R. CIV. P. 65(d)(2) ("(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."). As long-time and experienced litigators Hartman and Houston should have already know this, but in any event, if they had conducted a cursory search of applicable law they would have known that these requests for relief were not grounded in fact or applicable law, or even a good faith extension of applicable law.

As for the Remand Motion, again, if Hartman and Houston would have conducted a cursory search of applicable law and relevant and accessible documents, some of which are in their possession, they would have known that the Remand Motion is frivolous and their reliance upon the statements, sworn and unsworn, of Morabito was reckless.

First, in the Second Morabito Declaration, Morabito recounts his health issues from July 2, 2009, through the Spring of 2010, implying that he had no knowledge of events which transpired during that time period, and his sole knowledge is from his later review of court filings. He ignores the *Plaintiffs'/Counter-Defendants' Counter-Motion to Vacate Independent Accountants' Determination of the Closing Date Financial Report*, the #54412 appeal and ¶ G on page 2 of the Settlement Agreement which specifically provided that all issues raised in this appeal were fully and completely resolved and the #54412 appeal was dismissed.

Second, Hartman and Houston in the Remand Motion Reply assert that now the heart of the fraud on this Court is that the Abandonment Order was premised upon the Ind-CPA Report, which they claim was never litigated before the State Court, and the Working Capital Order, which they alleged was "vacated" or "set aside" by the "In Limine Orders." They then allege that Gordon committed fraud on this Court because he knew of the existence of the four "In Limine Orders" and "misled this Court intentionally" by not disclosing the "In Limine Orders" and the import of them – "aware that Plaintiff's then counsel [Robison] did not have access to the sealed 2010 State Court transcripts." See Remand Motion Reply, pp. 4-5, Stay Motion, p. 5, Injunction Complaint, p. 8.

That Hartman and Houston would allege this patently false scenario and charges of fraud on this Court and the State Court is astonishing for the following obvious reasons: (i) they had access to the  pleadings and orders regarding the 2016 Complaint, the Standing/Abandonment Motion and 2017 Remand Motion as well as the July 21 Letter and the attachments thereto; (ii) the State Court record was not sealed until December 2011, after the Settlement Agreement was finalized and executed; (iii) Robison was counsel of record for the Morabito Parties and actively involved in the State Court Action from February 14, 2011, during the appeal before the Nevada Supreme Court in #54412 as well as #57943 and #57944, and then in the Chapter 7 Cases until it withdrew in 2019; (iv) Lippes was additional counsel for the Morabito Parties from February 22, 2010, until it withdrew as counsel for Morabito after the commencement of the Chapter 7 Cases; (v) Robison was counsel for Morabito with regard to the 2016 Complaint and the Abandonment/Standing Motion; (vi) the statement that Morabito was not aware of the "In Limine Orders" during the litigation of the Abandonment/Standing Motion does not mean that his counsel, Robison, did not have access to or possession of the State Court record, including the "In Limine Orders"; (vii); the "In Limine Orders" do not provide that the State Court set aside the findings of the Ind-CPA Report and the Working Capital Order; (viii) the Working Capital Order specifically adopts and confirms the Ind-CPA Report; and (ix) the Notice of Appeal and Appellants'/Cross-Respondents' Opening Brief [Exhibits 8 and 9 hereto] filed in appeal #54412 confirm that Morabito and his counsel knew the import of the Working Capital Order and the assertion that the working capital dispute was never litigated by the State Court is intentionally misleading.

Third, the separate charge of fraud upon this Court by Gordon as to Morabito seeking to obtain the return of a gaming investigation fee paid in 2006 with regard to Winners Gaming is similarly frivolous, retaliatory in nature, and without any legal justification.  The submission by Gordon of the BHI Check Register in August 2019 to the Gaming Control Board is not fraud upon this Court.  There is simply no excuse for Hartman and Houston aiding and abetting Morabito by blindly putting forth Morabito's false and misleading statements and charges.  They have clearly violated their responsibilities as required of them pursuant to Bankruptcy Rule 9011.

1    See Dismissal Motion, ECF No. 25 in Adv. Pro. No. 20-05002-GWZ.  When one eliminates all

2    of the noise and extraneous charges, what is left is Morabito's attempt to obtain a deposit which

3    is either the property of the estate or BHI's property, but in any event not Morabito's property,

4    which attempt was disclosed to the Trustee by his very counsel, Robison.

5    **D.    There is No Basis in Law or Fact Supporting the Rule 9011 Pleadings Because the 60(d)(3) Motion is Barred by Nevada Claim Preclusion Law and had Hartman and Houston Conducted a Reasonable and Competent Investigation, They Would Have Known That.**

7            Morabito's second claim for injunctive relief in the Injunction Complaint and the

8    60(d)(3) Motion have no basis in law or fact.  Morabito's request for declaratory relief in the

9    60(d)(3) Motion fails under applicable Nevada and federal law and, even if the State Court were

10   to grant the 60(d)(3) Motion, it would not affect the validity of the Trustee Adversaries, the

11   Superpumper Judgment or Nondischarge Judgment.

12           First, the 60(d)(3) Motion and, as such, the second claim for relief of the Injunction

13   Complaint, is barred under applicable Nevada law.  Boca Park involved a commercial dispute

14   over an exclusive use clause in a lease for space in a shopping center.  See Boca Park

15   Marketplace Syndications Group, LLC v. Higco, Inc., 133 Nev. 923, 923, 407 P.3d 761, 762

16   (2017).  In late 2011 or early 2012, Higco (the tenant) learned that Boca Park (its landlord)

17   entered into a lease with a new tenant, and the new tenant applied for a gaming license.  See id.,

18   at 924.  Higco sued Boca Park for declaratory relief, alleging that Boca Park had leased space to

19   the new tenant, who applied for a gaming license, and sought a judgment declaring that the

20   Higco lease gave Higco the exclusive right to offer gaming in the shopping center.  See id.

21   Shortly after Higco filed its declaratory judgment complaint, the new tenant obtained its gaming

22   license and opened for business, competing with Higco by also offering slot-machine gaming.

23   See id.  Higco did not amend its complaint to seek damages or injunctive relief, and the district

24   court decided in Higco's favor and entered declaratory judgment.  See id.

25           Notwithstanding the declaratory judgment, Boca Park continued to allow the new tenant

26   to offer slot-machine gaming.  See id.  Higco protested that this breached the exclusive use

27   clause in the lease, causing ongoing economic damages and in December 2014, two years after

28

the declaratory judgment became final, Higco filed a second complaint against the Boca Park, seeking in its complaint damages from Boca Park for breach of contract and breach of the implied covenant of good faith and fair dealing.  See id.

Boca Park moved to dismiss, arguing that the doctrine of claim preclusion barred Higco's claims for contract damages because those claims could and should have been made in the declaratory judgment action.  See id.  The court denied the Boca Park's motion, a bench trial followed, in which the district court awarded Higco $497,000 in damages for Boca Park's breach of the exclusive use clause in the Higco's lease, and Boca Park appealed.  See id.

On appeal, the Nevada Supreme Court recognized and adopted an exception to the general rule that a valid final judgment conclusive on the parties ordinarily bars a later action based upon the claims that were or could have been asserted in the first case:

> the Restatement (Second) of Judgments endorses an exception to claim preclusion where an action seeking a declaratory judgment is followed by a later action for damages or other coercive relief:
>
> > **When a plaintiff seeks solely declaratory relief**, the weight of authority does not view him as seeking to enforce a claim [] against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.
>
> Like the majority of courts that have addressed the claim-preclusive effect of declaratory judgments, we find the Restatement's reasons for a declaratory judgment exception persuasive and therefore hold that claim preclusion does not apply where the original action sought only declaratory relief.

See id., 924-26 (citations omitted) (emphasis added).  The Boca Park court made clear that "[f]or the declaratory judgment exception to apply, *the original action must have only sought declaratory relief*."  Id., at 928 (emphasis added).  "Thus, if the plaintiff stated a claim for coercive relief in addition to declaratory relief in the original action, the exception does not apply."  Id.

Here, Morabito commenced the coercive action for fraud upon the State Court in the 2016 Complaint, which was determined to be without merit, not colorable or plausible, could not survive a 12(b)6 motion, and was dismissed with prejudice. While Morabito in standard Morabito style has conjured up a new theory – that Dwelle committed the initial fraud and then the Herbst Parties then took advantage of this to "cook" the BHI financial records – the "heart of the case" remains the other two elements of damages, being the construction management fraud and value of the business fraud, not the working capital dispute. The exception to claim preclusion in <u>Boca Park</u> is inapplicable, and the ordinary claim preclusion rules apply and bar the 60(d)(3) Motion as well as the second claim for injunctive relief in the Injunction Complaint because it is reliant upon the merits of the 60(d)(3) Motion.

Second, much of the relief requested in the 60(d)(3) Motion is prohibited by applicable law. The 60(d)(3) Motion requests that the State Court take such additional action as may be necessary and appropriate to affect a complete denial of relief to the Herbst Parties and/or, though not a party, the Chapter 7 Trustee in all pending civil and bankruptcy actions including but not limited to the Nondischarge Judgment, the Abandonment Order, and the Trustee Adversaries. <u>See</u> 60(d)(3) Motion, pp. 73-74. However, the State Court is prohibited from enjoining or interfering with actions before this Court or setting aside this Court's judgments. The United States Supreme Court held in <u>Donovan</u> that state courts are completely without power to restrain federal-court proceedings in *in personam* actions, even though prohibition is addressed to parties rather than to federal court itself. <u>See Donovan v. City of Dallas</u>, 84 S. Ct. 1579, 1582-53 (1964) ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings.[] That rule has continued substantially unchanged to this time. … While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions like the one here."). <u>See also</u> <u>Proctor v. Vishay Intertechnology Inc.</u>, 584 F.3d 1208, 1229 (9th Cir. 2009) (citing <u>Donovan</u> with approval).

33

What makes all of this more egregious is that Hartman and Houston had the benefit of the July 21 Letter which contained a full investigatory analysis of the allegations set forth in the 2016 Complaint.  Yet nothing seems to have dissuaded them from simply filing whatever Morabito provided them to file.

**E.    There is No Basis in Law or Fact Supporting the Rule 9011 Pleadings Because Morabito Lacks Standing to Prosecute the 60(d)(3) Motion.**

In the Standing/Abandonment Motion, Morabito acknowledged that the 2016 Claims of the 2016 Complaint were estate property that could be prosecuted by the Trustee but argued that he had independent standing to bring a claim for fraud on the State Court.  See ECF No. 741 in Chapter 7 Case ("With respect to the Declaratory Relief Claim, while the Debtors' estates have standing to prosecute the claims, so do the Debtors and any other party affected by the fraud. *See generally*, *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994).  The Damages and Fraudulent Transfer Claims belong to the estate and the Trustee has exclusive authority and standing to prosecute the Claims.").  After this Court denied Morabito standing to prosecute the 2016 Claims and his request that the 2016 Claims be abandoned, the Trustee filed the Notice of Dismissal, thereby dismissing the 2016 Claims with prejudice, which Dismissal was affirmed on appeal by the BAP and the Ninth Circuit.  Neither this Court in the Abandonment Order, nor the BAP or Ninth Circuit in their affirmances, addressed Morabito's contention that he had independent standing apart from Trustee to bring a claim for fraud on the State Court because this Court determined that only estate claims were alleged in the 2016 Complaint.

Morabito now contends in the Remand Motion that "[t]he Rule 60(d)(3) Motion is a separate individual claim by Morabito seeking declaratory relief for fraud upon the court identifying only individual claims."  See Remand Motion, p. 3.  However, applicable law does not support Morabito's contention.  Again, Morabito is seeking to prosecute on his own behalf the claims that were asserted in the 2016 Complaint.  The 60(d)(3) Motion is a prepetition claim, held solely by the Morabito estate.

A bankruptcy estate includes all legal and equitable interests in property held by the debtor at the time of filing, including all causes of action the debtor could have brought outside

34

bankruptcy.  See In re Yan, 649 Fed. Appx. 359, 361 (9th Cir. 2016) (not published) (citing In re Jess, 169 F.3d 1204, 1207 (9th Cir. 1999) (citing 11 U.S.C. § 541(a)).  In Yan, the Ninth Circuit found that all of the debtor's substantive allegations indicated that his claims were based upon wrongdoing that occurred before the time of his bankruptcy filing, even though other damage was alleged to have occurred postpetition.  Yan, 649 Fed. Appx. at 361.  The Yan court concluded that the claims as alleged accrued prepetition and were estate claims because "[t]he claims were 'sufficiently rooted in the prebankruptcy past[.].'"  See id. (citing Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)).

Here, Morabito readily acknowledges in the Remand Motion that "[t]he material facts supporting an intentional scheme to perpetrate the fraud upon the court address in the [60(d)(3) Motion], all occurred prior to the petition date of June 20, 2013."  See Remand Motion, p. 2.  See also id., p. 8 ("the acts giving rise to the initial fraud on the court all occurred prior to June 20, 2013, the date of the involuntary petition against Morabito.").  Thus, the fraud on the State Court claim alleged in the 60(d)(3) Motion is "sufficiently rooted in the prebankruptcy past" and estate property.  See Yan.

Moreover, Morabito failed to list his alleged independent right to bring a claim for fraud on the State Court or any claims against the Additional Defendants on his schedules or statements.  Morabito also did not claim his alleged independent right as an exempt asset and such rights were not abandoned to Morabito in the Chapter 7 Case.  Consequently, it is unclear what Morabito possesses that provides him standing to assert claims sufficiently rooted in the prebankruptcy past that were not exempt from his Chapter 7 estate or abandoned to Morabito by the Trustee.  See Canatella v. Towers (In re Alcala), 918 F.2d 99, 102 (9th Cir. 1990) (causes of action which accrued before a Chapter 7 petition is filed are part of the estate vested in the trustee); 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006) (the Bankruptcy Code endows the bankruptcy trustee with the exclusive right to sue on behalf of estate).  See also In re Saylor, 178 B.R. 209, 215 (9th Cir. B.A.P. 1995), aff'd, 108 F.3d

219 (9th Cir. 1997) (if no order had been entered in the underlying Chapter 7 proceeding abandoning the fraudulent transfer cause of action, then judgment creditor lacked any interest in property transferred by debtor and had no standing to bring the fraudulent transfer cause of action, since debtor's equitable interest in transferred property would have come into the estate).

Further, Morabito's reliance upon <u>Eyak Native</u> for independent standing apart from the Trustee is misplaced.  While the panel in <u>Eyak Native</u> wrote that "a nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are directly affected[,]" <u>Eyak Native</u> does not support Morabito's argument that he has independent standing apart from the Trustee to prosecute the 60(d)(3) Motion.  <u>Eyak Native</u> applied federal law to an action construed to be raised under FRCP 60(b)(3) and, thus, the Ninth Circuit's passing comment that a "nonparty" who's interests are "directly affect" is not binding with respect to the 60(d)(3) Motion brought pursuant to Nevada state law.  <u>Eyak Native</u> is also factually distinct because it did not involve a Chapter 7 bankruptcy, Morabito was a party to the vacated State Court Judgment and Confession of Judgment, and Morabito's privy – the Trustee – dismissed Morabito's estate's claim for fraud on the State Court with prejudice in the Dismissal Notice.

More importantly, Morabito is not "directly affected" by the alleged fraud upon the State Court because Morabito has no independent interest in the State Court Action.  See <u>Herring v. F.D.I.C.</u>, 82 F.3d 282, 285 (9th Cir. 1995) (distinguishing <u>Eyak Native</u>).  The State Court Judgment was vacated, the Abandonment Order was based upon the allegations of the 2016 Complaint, and the Nondischarge Judgment was not based upon the State Court Judgment or solely upon the Confession of Judgment – it was based upon Morabito's fraudulent and duplicitous conduct inducing the Herbst Parties to agree to the settlement agreement and vacate their State Court fraud judgment.  See ECF No. 873 in Chapter 7 Case, ¶¶ 72, 76, & 82; ECF No. 122 in Nondischarge Action, ¶ 54; ECF No. 124 in Nondischarge Action, pp. 2, 10, & 12-13.

Morabito clearly lacks standing to prosecute the 60(d)(3) Motion and had Hartman and Houston conducted a reasonable and competent inquiry, they would have known that.

…

**F.    There is No Basis in Law or Fact Supporting Morabito's Allegation that the Ind-CPA Report and Working Capital Order were set aside by the State Court because the Herbst Parties agreed that the Ind-CPA would not consider the PBTK Working Capital Calculation.**

Pursuant to the *Order Appointing Independent Accountants*, the Herbst Parties produced to the Ind-CPA the BHI Closing Date Financial Report, together with work papers, financial statements, invoices, or other information used by the Herbst Parties in connection with the preparation of the Closing Date Financing Report, which work papers included the PBTK Working Capital Calculation.  See Exhibits 5, ¶¶ 4 and **7**, pp. 3-4.  On December 3, 2008, Morabito filed a motion to strike portions of the Herbst Parties' submission to the Ind-CPA.  See **Exhibit 22** hereto.  Subsequently, Morabito and the Herbst Parties filed a stipulation and order regarding the motion to strike, which provided the following:

> 4. On December 4, 2008, the parties meet with the Independent Accountants in Reno. At this meeting, the Independent Accountants represented that they would not consider the Letter in making their determination pursuant to the Order. Additionally, the Independent Accountants represented that the PBTK Report would be removed from the Defendants' submission and would not be reviewed or considered at this time in making their determination pursuant to the Order.

Id.  Consistent therewith, the Ind-CPA Report provided that, "[a]fter a dispute arose between the parties as to [the Herbst Parties'] providing the Independent Accountants with the work product of the accountants hired by the [Herbst Parties] to review the Closing Date Financial Report, the Independent Accountants agreed with Plaintiffs' position not to utilize these materials."  See Exhibit 7 hereto, p. 4 (citation omitted).  Thus, Morabito's allegation that the Ind-CPA Report or Working Capital Order were set aside by the State Court has no basis in fact or law and Hartman and Houston would have known that had they conduct a reasonable and competent investigation.

**G.    There is No Basis in Law or Fact to Morabito's Allegation that Issues Related to Western Energetix Cardlock Allocations" A/R, A/P, and the Dwelle Sale Transaction Were Not Litigated.**

Pursuant to the Order Appointing the Ind-CPA and the ARSPA, "[o]nly disputed items (plus any items deemed by the [Ind-CPA] to be reasonably necessary to a determination of the disputed items) will be submitted to the [Ind-CPA] for review."  However, the parties declared

that all amounts on the BHI Closing Date Financial Report were in dispute, and subject to the Ind-CPA's review.  See Exhibit 5, ¶ 3, and Exhibit 7, p. 2, hereto.

In describing the Ind-CPA's test work, the Ind-CPA Report provided that:

ACCOUNTS RECEIVABLE — Amounts included in Accounts Receivable primarily related to Western Energetix Cardlock Allocations, as well as some miscellaneous receivable items. Amounts were traced to subsequent collection in less than one year. In addition, per Section 2.3 of the [AR]SPA, all Accounts Receivable greater than 30 days old were excluded from the balance.

…

ACCOUNTS PAYABLE — Accounts payable were generally tested in three ways, 1) review of the underlying invoices, 2) tracing to subsequent payment to the vendor, and 3) direct confirmation with the vendor. Per discussion with the parties, all vendor accounts payable balances greater than $10,000 as of July 2, 2007 were selected for testing. This assigned level of scope equated to $11,316,213 in accounts payable being tested out of total accounts payable of $11,600,713, which provide total coverage of 98% of the accounts payable balance. In all, over 6,000 individual invoices were reviewed by the [Ind-CPA] and traced and agreed to the accounts payable report. All checks representing subsequent payments to the vendors for accounts payable balances greater than $10,000 were additionally traced and agreed to inclusion on the applicable bank statements without exception. Finally, confirmations were sent out to all vendors with accounts payable balances greater than $10,000. These confirmations and a summary of the results can be found in Exhibit "H". The accounts payable confirmation coverage obtained was $8,363,415 out of a requested $9,097,519, or 92%. …

ACCOUNTS PAYABLE ADJUSTMENTS — This amount consisted of numerous miscellaneous items that were generally not included in BHI's adjusted AP Month End Invoice Report. It included items such as late received invoices, reserves set up for amounts not quantifiable at the time, reclassifications of negative accounts receivable items, etc. The [Ind-CPA] reviewed all categories greater than $10,000 for a total coverage of $387,043 out of $401,553, or 96% testing coverage. The primary means of testing by the [Ind-CPA] was to trace the amounts to underlying invoices or other documentation and reviewing for subsequent payment within one year.

See Exhibit 7 hereto, pp. 8-11.  Attached as Exhibit C to the Ind-CPA Report are the Ind-CPA's final adjustments to the BHI working capital, which provides that BHI had accounts receivable of $745,483 ($339,192 per Morabito) and accounts payable of $11,973,056 ($3,627,341 per Morabito) on the closing date.  Furthermore, attached as Exhibit H to the Ind-CPA Report is a list of BHI's accounts payable confirmations, which provided that the Ind-CPA confirmed that BHI owed WE $4,054,631.77 and $50,585.85 as of June 30, 2007.

On April 17, 2009, during the Ind-CPA's test work, Morabito's counsel in the State Court Action, Leif Reid, transmitted a letter of the same date (the "April 17 Letter") to the Ind-CPA, which raised issues that Morabito had with the accounts payable detail the Herbst Parties' included in their working capital report, specifically with respect to liabilities and assets that Morabito contended should have been associated with Nella Oil/Western Energetix, not BHI. See **Exhibit 23** hereto. The April 17 Letter requested that the Ind-CPA speak with the owner of Nella Oil/Western Energetix, Walter Dwelle ("Dwelle"), and that Dwelle would provide an affidavit supporting Morabito's claim. See id.

On April 20, 2009, the Ind-CPA asked that Morabito provide him with the specific accounts, vendors, transactions or any other detail relating to Morabito's allegations that certain of BHI's reported liabilities were the financial obligation of an entity other than BHI so that the Ind-CPA could consider and investigate Morabito's claims through their test work process. See **Exhibit 24** hereto. On April 21, 2009, the Ind-CPA spoke with Dwelle by telephone regarding Morabito's allegations in the April 17 Letter. However, Dwelle suggested that no Nella Oil/Western Energetix accounts payable or other transactions should be in the BHI financials as of July 2007 because the sale closed in January 2007 and any commingling of the companies' activities would have ceased well before July 2007. See id.

On April 23, 2009, Shepard Mullin, counsel to the Ind-CPA, also responded to the April 17 Letter, addressing each and every point raised in the April 17 Letter, including the assertions regarding Nella Oil/Western Energetix. See **Exhibit 25** hereto. Morabito often promised to provide an affidavit or other testimony from Dwelle to support his allegations, but never did.

Dwelle and Allen Breese (the Nella and WE financial manager) were deposed during the State Court Action on January 26, 2010. See **Exhibits 26** and **27** hereto. In the depositions, counsel for the Herbst Parties and Morabito questioned Dwelle and Breese regarding the WE and BHI transactions from the time of the purchase of BHI assets by WE on January 2, 2007, how the books and records of BHI were maintained, the card-lock arrangement, the manner by which the card-lock account receivable was maintained, the supervision of the BHI financial records

from January 2, 2007 through mid-year 2007, and about the Herbst Parties' option to buy the Chevron Assets (as defined in the ARPSA).  See generally id.

Dwelle was also asked during his January 26, 2010 deposition whether Morabito ever asked him to submit an affidavit in the State Court Action.  Dwelle testified that Morabito asked him to submit an affidavit, but he declined to do so because the affidavit provided by Morabito said some things that Dwelle would not have said, so he decided "in the interest of propriety," not to submit the affidavit.  See Dwelle Deposition Trans., pp. 27:20-8:28.

Thus, Morabito's statement that these matters were never litigated during the State Court Action is not true and had Hartman and Houston conduct a reasonable and competent investigation they would have known that.

**H.    Hartman and Houston Failed to Withdraw the Rule 9011 Pleadings Within 21-days of Service of the Sanctions Motion Such That This Court Should Award the Herbst Defendants Monetary Sanctions Pursuant to Bankruptcy Rule 9011.**

When Hartman and Houston prepared and/or reviewed, signed and filed the Rule 9011 Pleadings, they knew full well or should have known after investigation and due diligence that: (i) the facts alleged and asserted by Morabito in the Rule 9011 Pleadings regarding the history of the litigation between the Herbst Defendants and Morabito did not have or were unlikely to have any evidentiary support; (ii) the so-called "In Limine Orders" on their face did not support the allegations in the Rule 9011 Pleadings and that Morabito's counsel, including Robison and Lippes, had copies of the "Limine Orders"; (iii) the statement that the working capital dispute was not litigated in the State Court was at best misleading since it was determined in by the Ind-CPA and confirmed by the State Court; (iv) the charges that Mr. Desmond and Mr. Gordon committed fraud upon the courts (as applicable, the State Court or the Bankruptcy Court) were frivolous, retaliatory on the part of Morabito, not supported by any evidence and not supported and warranted by existing law; (v) in order to seek the relief sought against the Trustee in the 60(d)(3) Motion, the Injunction Complaint and Stay Motion, they were required to include the Trustee as an indispensable party and in part a violation of Section 362(a) of the Bankruptcy Code; (vi) the State Court cannot enjoin and set aside orders, proceedings and actions of this

40

Court; (vii) Nevada claims preclusion law barred Morabito seeking declaratory relief in the 60(d)(3) Motion and Injunction Complaint; and (viii) Morabito's newest rendition of the alleged fraud upon Judge Adams has morphed from the Working Capital Order being the "heart of the case" and the fraudulent conduct of the Herbst Parties and their experts (for which Mr. Dwelle was to be a key supporting witness) to now the Working Capital Order never having been litigated or considered by Judge Adams and the fraud being perpetrated by Mr. Dwelle and opportunistically used by the Herbst Defendants for their benefit.

The Herbst Defendants served Hartman and Houston with a draft of this Sanctions Motion on May 1, 2020, and demanded, consistent with Bankruptcy Rule 9011, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, all within 21 days of receipt of this Sanctions Motion. However, Hartman and Houston refused to comply with the demands for withdrawal and dismissal.

**VI.**
**CONCLUSION**

Based upon foregoing, the Herbst Defendants respectfully request that the Court enter an order ordering that Hartman and Houston pay the attorneys' fees and expenses of the Herbst Defendants' counsel – Garman Turner Gordon LLP and Dickinson and Wright – related to the Material Pleadings and all hearings and proceedings before the Court related thereto, and grant any other relief appropriate under the circumstances.

Dated this 28th day of May 2020.

GARMAN TURNER GORDON LLP

By: _/s/ Mark M. Weisenmiller_
GERALD M. GORDON, ESQ.
MARK M. WEISENMILLER, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (723)-777-3000
Fax: (725)-777-3112
*Attorneys for the Herbst Defendants*

4814-1440-5308, v. 3