GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
MARK M. WEISENMILLER
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone 725-777-3000
Facsimile 725-777-3112
*Attorneys for the Herbst Defendants*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>PAUL A. MORABITO,<br><br>Debtor. | Case No.: BK-S-13-51237-GWZ<br>Chapter: 7<br><br><u>Hearing</u>:<br>Date:   February 4, 2021<br>Time:   10:00 a.m. |

**REPLY TO OPPOSITION TO MOTION FOR AN ORDER IMPOSING SANCTIONS AGAINST JEFFREY HARTMAN, ESQ. AND HARTMAN & HARTMAN AND DAVID HOUSTON, ESQ. AND THE LAW OFFICES OF DAVID R. HOUSTON <u>PURSUANT TO BANKRUPTCY RULE 9011</u>**

JH, Inc. ("<u>JH</u>"), Maryanna Herbst as Trustee of the Herbst Family Trust dated December 17, 2002 ("<u>Trust</u>"), and Berry-Hinckley Industries ("<u>BHI</u>" and together with JH and the Trust, the "<u>Herbst Parties</u>"), and Timothy P. Herbst, Troy D. Herbst, and Edward J. Herbst (together, the "<u>Additional Defendants</u>," and with the Herbst Parties, the "<u>Herbst Defendants</u>"), by and through their counsel, the law firm of Garman Turner Gordon, hereby respectfully submit their reply (the "<u>Reply</u>") to the *Opposition to Motion for an Order Imposing Sanctions Against Jeffrey Hartman, Esq. and Hartman & Hartman and David Houston, Esq. and the Law Offices of David R. Houston Pursuant to Bankruptcy Rule 9011* [ECF No. 1135] (the "<u>Opposition</u>"), filed by Robison, Sharp, Sullivan & Brust ("<u>Robison</u>") on behalf of Jeffrey Hartman, Esq. and Hartman & Hartman (collectively, "<u>Hartman</u>") and David Houston, Esq., and the Law Offices of David R. Houston (collectively, "<u>Houston</u>") on December 15, 2020.

This Reply is made and based upon the following Memorandum of Points and Authorities, the declaration of Gerald M. Gordon (the "<u>Gordon Declaration</u>") filed herewith, the

1

pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is requested, and the argument of counsel at the time of the hearing of the Sanctions Motion.[1]

# I.
# LEGAL ARGUMENT

**A.   The Opposition Makes Clear that Ordering Hartman and Houston to Pay the Attorneys' Fees and Expenses of the Herbst Defendants' Related to the Rule 9011 Pleadings is Necessary and Appropriate.**

In the very opening of the Opposition, Robison states:

> Attorneys hold a cherished and crucial position in the administration of justice. Every attorney must recognize inescapable and unavoidable duties of loyalty to their client. While honoring duties of loyalty and pursuing zealous representation of clients, attorneys cannot and should not be permitted to abuse the system of justice through unnecessary, vexatious or unfounded procedural machinations. As officers of the court, attorneys owe the system, the courts, their clients and the public respect, dignity and integrity.

Thereafter, Robison argues that this Court should deny the Sanctions Motion because Hartman and Houston were already reprimanded by this Court and "[t]his Court's reprimand was constructive and certainly served to deter each attorney watching the hearing from filing anything that could be construed as improper." See Opposition, p. 17. However, the Opposition itself evidences the falsity of Hartman and Houston's contention.

**1.   The Opposition Doubles-Down on Spurious Attacks and False Statements.**

The Opposition attacks the Herbst Defendants and their counsel and includes material misstatements of fact for which the truth is readily apparent. It is the height of hypocrisy to set forth the standards required of attorneys and state that Houston and Hartman have been sufficiently reprimanded by this Court, while, at the same time, continuing to perpetuate false statements and introducing newly concocted falsehoods. What is it about representing Paul

---

[1] "Sanctions Motion" as used herein shall refer to the *Motion for an Order Imposing Sanctions Against Jeffrey Hartman, Esq. and Hartman & Hartman and David Houston, Esq. and the Law Offices of David R. Houston Pursuant to Bankruptcy Rule 9011* [ECF No. 1099] filed on May 29, 2020. All capitalized undefined terms used herein shall be ascribed the definitions set forth in the Sanctions Motion.

2

Morabito that leads his counsel to repeatedly assert falsehoods and misrepresentations believing that this is acceptable conduct and will shield them from sanctions?

For example, Robison on behalf of Hartman and Houston wrote in the Opposition:

> The Herbst Defendants unfairly attack Hartman and Houston by misconstruing Hartman and Houston's argument regarding the BHI Check Register. The Herbst Parties argue that Hartman and Houston aver that John Desmond and Gerald Gordon obtained the Abandonment Order and Nondischarge Judgment by defrauding the Court through Gordon's transmission of the BHI 2006 Check Register. **Hartman and Houston Never made that argument**.
>
> Rather, Hartman and Houston alleged that Gordon's August 22, 2019 e-mail wherein he sent Hartman and Houston the purported BHI Check Register was the first evidence that corroborated their theory that <u>Gordon committed fraud on the Court in 2010</u> and that demonstrated Wood fraudulently re-created certain BHI financial statements. *See* Independent Motion, p. 25.

Opposition, p.14 (bold in original; underlining added).

So, apparently this Court and the Herbst Defendants misconstrued the assertion set forth in the Injunction Complaint, ¶ 104. It was not fraud upon this Court as specifically alleged in ¶ 104, but the perpetration by Mr. Gordon of fraud on the State Court in 2010. In order words, Robison on behalf of Houston and Hartman is now asserting that Mr. Gordon intentionally perpetrated fraud before Judge Adams.

However, Mr. Gordon was not counsel to the Herbst Defendants in the State Court Action in 2010. Jones Vargas represented the Herbst Defendants. Mr. Gordon never appeared before Judge Adams nor made any statements or took any actions in the State Court, let alone with regard to check registers, etc. <u>See</u> Gordon Declaration, ¶ 3.

Obviously, Robison, and specifically Mr. Robison and Ms. Winston, and their clients, Hartman and Houston, appreciate the consequences which can flow personally for Mr. Gordon if this assertion were true. The Opposition cites to <u>NC-DSH, Inc. v. Garner</u>, 125 Nev. 647, 218 P.3d 853 (2009) regarding fraud upon the court. As set forth in the Opposition, this "embrace[s] only that species of fraud which, does, or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases…" Opposition, pp. 10-11 (citing <u>Garner</u>, 125

Nev. at 654).

Yet, despite this acknowledgment of the seriousness of such an allegation and the heavy burden of proof upon the party asserting the allegation, Hartman and Houston and Robison doubled-down on the charge rather than acknowledge that the claim of the Rule 9011 Pleadings had no support in fact or law. What makes this doubled-down assertion of fraud upon the State Court so contemptuous and obscene is that Robison commenced its representation of Morabito during the pendency of the State Court Action and executed the *Settlement Agreement and Mutual Release* as counsel for Paul Morabito on November 30, 2011. Robison knew full well when it filed the Opposition that Jones Vargas was counsel and that Mr. Gordon never appeared before Judge Adams. But if Mr. Robison and Ms. Winston did not have personal knowledge of the Robison representation of Morabito at that time, they were, at the very least, grossly negligent in not investigating the revised assertion given the severity of the charge of fraud upon the State Court. Thus, it is clear that Hartman, Houston, and their counsel, Robison, learned nothing from this Court's "reprimand," and the imposition of monetary sanctions are necessary and appropriate to deter the filing of frivolous papers, in bad faith, for improper purposes.[2]

**2.  The Opposition Failed to Address the Substance of the Sanctions Motion and Blames the Herbst Defendants.**

The Opposition does not even address the numerous factual and legal deficiencies of the Rule 9011 Pleadings detailed in the Sanctions Motion and rehashes the same arguments that the State Court, this Court, the District Court, the BAP and the Ninth Circuit have all rejected as meritless. For instance, how can counsel explain or justify the request in the Injunction Complaint and the Stay Motion to enjoin William Leonard, the Chapter 7 Trustee, from taking any further action to enforce judgments and claims against Morabito, Edward Bayuk and Salvatore Morabito, but not name Mr. Leonard as a defendant in the Injunction Complaint? Yet, when confronted with this fatal defect, there was never an attempt to amend the Injunction Complaint or file a voluntary dismissal of the Injunction Complaint.

---

[2] Robison, Hartman, and Houston should immediately withdraw their false accusation that Mr. Gordon committed fraud upon the State Court.

4

Moreover, Hartman and Houston state that in raising the "In Limine Orders" they were simply seeking to inform this Court that the working capital issue was not litigated during the State Court Action, not that the Ind-CPA report was not confirmed by and relied upon by the State Court. See Opposition, p. 12, n. 3. This is absurd and simply not true in light of their assertions regarding the "In Limine Orders" in the: (i) *Reply to Opposition to Amend Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 23 in Adv Pro. No 20-05003-GWZ]; (ii) the incorporation of pages 25-29 of the 60(d)(3) Motion which clearly asserts that the Ind-CPA Report and the Working Capital Order were set aside and not considered by the State Court; and (iii) Paragraph 56 of the Injunction Complaint referenced below.

With regard to the *Order Denying Amended Motion for Remand of Removed Proceedings; Request for Abstention* (the "Remand Order') [ECF No. 44 in Adv. Pro. No. 20-05003-GWZ] and the *Order Granting Motion to Dismiss Complaint for Declaratory Judgment* (the "Dismissal Order") [ECF No. 52 in Adv. Pro. No. 20-05003-GWZ], the Opposition ignores what has transpired since the Remand Order and Dismissal Order were entered. The Remand Order was appealed to the BAP, and the appeal was dismissed upon the request of Morabito and with the consent of the Herbst Defendants. See ECF No. 67 in Adv. Pro. No. 20-05003-GWZ. The Dismissal Order was never appealed.

Furthermore, the Herbst Defendants did not "unfairly attack" Hartman and Houston or "misconstrue" their arguments. In the Injunction Complaint, Houston and Hartman alleged the following material allegations in support of their claim for declaratory relief that the Abandonment Order and Nondischarge Judgment were the result of the Herbst Defendants' (and their counsels') fraud upon this Court:

> 56. The Bankruptcy Court was misled and defrauded by the Herbst Parties through their attorneys John Desmond and Gerald Gordon: the Ind-CPA Report was set aside by In Limine Orders in 2009 and 2010 prior to the State Court Trial. The Ind-CPA's Working Capital Order was not considered or litigated by the State Court.

> 57. In the main case as well as in both Adv. 15-05019 and Adv. 16-05043, Gordon misled the Court intentionally, aware that Plaintiff's then counsel did not

have access to the sealed 2010 State Court transcripts.

58. Gordon doubled down on his reliance of the factual ignorance of the Court and opposite counsel by sending a July 21, 2017 letter to Plaintiff's Counsel demanding $140,000 in legal fees including $42,000 for Desmond. Gordon asserted that the Ind-CPA was never set aside. This is false. Gerald Gordon wrote (Pg. 7 of the July 21, 2017 letter): "Contrary to Morabito's unsupported allegation, no portion of the I.A.'s Report was ever set aside or discounted by the State Court."

59. This Court relied on the validity of the Ind-CPA findings (Abandonment Order §7- 11; 13, 44, 47-50, 52 & 80) and Working Capital Order (Abandonment Order §13 & 14) in making his Abandonment Order.

60. The Abandonment Order is premised on the State Court's reliance on the Ind-CPA, and its Working Capital Order, which was vacated and sealed State Court record, rendering it inaccessible to Plaintiffs' counsel.

…

104. Defendants had carried the scheme of fraud upon the court from the State Court into this court. In August 2019, Gordon submitted manufactured BHI 2006 Check Register to Plaintiff's counsel seeking to have the U.S. Trustee seize $125,000 in deposits with the Nevada Gaming Control Board that Gordon claims belongs to BHI.

105. On August 22, 2019, Gordon sent an email to Plaintiff's counsel attaching a purported BHI Check Register dated September 22, 2006 showing "legal and accounting" entries for a six-month period and a $125,000 check dated June 13, 2006 from BHI to the NGCB.

…

112. The re-created BHI financials, fraudulently manufactured by Wood and now used by Gordon in the bankruptcy action is a direct continuance of the scheme to manipulate the proper unbiased and impartial administration of justice.

113. Gordon's 2019 release of the fraudulent check registry is further clear and convincing evidence that Wood fraudulently re-created certain BHI financial statements.

…

135. In 2017, the fraud upon the courts continued unabated. The Abandonment Order relied on the 2010 State Court independent accountant ("Ind-CPA") and the Greene Report. The Bankruptcy Court was misled by John Desmond and Gerald Gordon, as the State Court Judge had issued four In Limine Orders, pre-trial,

regarding the Ind-CPA Working Capital Order as matters that would not be litigated by the State Court due to the Nevada Supreme Court Appeal against the Ind-CPA Working Capital Order.

…

140. Judge Adams had the same good faith reliance as this Court had of Gordon. Injunction Complaint, ¶¶ 56-60, 104-105, 112-113, 135, and 140.

As such, the Herbst Defendants argued in the Sanctions Motion that the request for declaratory relief that the Abandonment Order and Nondischarge Judgment were obtained by the Herbst Defendants' fraud was frivolous because there is no factual or legal basis supporting Morabito's material allegations that: (i) the Ind-CPA Report was "set aside" in the "In Limine Orders" or the Working Capital Order was never litigated before the State Court [see Sanctions Motion, pp. 28-31]; (ii) this Court relied upon the validity of the Ind-CPA findings and Working Capital Order in making the Abandonment Order [see id., p. 31]; (iii) the Herbst Defendants obtained the Abandonment Order and Nondischarge Judgment by defrauding this Court through Mr. Gordon's transmission of the BHI Check Register to Hartman [see id., pp. 31-32]; and (iv) the Nondischarge Judgment was based upon the State Court Judgment or Confession of Judgment [see id., pp. 32-34]. Thus, the Herbst Defendants did not "unfairly attack" or "misconstrue" anything and the Opposition makes clear that an order requiring that Hartman and Houston pay the Herbst Defendants' attorneys' fees and expenses related to the Rule 9011 Pleadings is necessary.

**B.** **Hartman and Houston Did Not Conduct a Reasonable Inquiry into the Facts and Law Prior to Filing the Rule 9011 Pleadings.**

This Court should give no weight to Hartman and Houston's unsupported allegations regarding their factual and legal inquiry prior to filing the Rule 9011 Pleadings and find, based upon the uncontroverted evidence submitted by the Herbst Defendants and on this Court's docket, that Hartman and Houston did not conduct a reasonable inquiry into the law and facts underpinning the Rule 9011 Pleadings.

First, Hartman and Houston's allegations that they (i) gathered the factual information from Morabito, and (ii) continued their investigation by reviewing the reports from three

"experts": Randy Wagner, Victor Song, and Richard Speier, Jr., and conclusion that they "not only rel[ied] on their client's version of what occurred, but also independently investigated the facts" are unsubstantiated. See Opposition, pp. 13-14. Hartman and Houston did not submit declarations or documents evidencing that they undertook any investigation of the facts underpinning the Rule 9011 Pleadings.

Second, even if this Court were to assume that Hartman and Houston's unsupported allegations regarding their factual inquiries were true, which it should not, simply reviewing the "reports" of the "experts" was not in any way reasonable under the circumstances. These individuals are not experts in legal matters such as fraud upon the court, declaratory relief, or bankruptcy law, and their unqualified opinions and "reports" do not identify what specific documents they even reviewed and did not address, for instance, that the matters asserted in the 60(d)(3) Motion regarding working capital and Walter A. Dwelle were raised by Morabito and rejected by the Ind-CPA and Judge Adams in the State Court Action.

Third, nowhere in the Opposition do Hartman and Houston even allege that they reviewed the Abandonment FF&CL [ECF No. 873], the Amended Findings of Fact and Conclusions of Law in support of the Nondischarge Judgment [ECF No. 122 in Nondischarge Action], this Court's decision on Morabito's FRCP 54(b) motion related to the Nondischarge Judgment [ECF No. 124 in Nondischarge Action], or this Court's December 20, 2018 oral ruling on the registration motion [ECF No. 245 in the Nondischarge Action]. Had Hartman and Houston conducted even a cursory review of the filings, orders and judgments of the State Court and this Court upon which Morabito materially relies in the Rule 9011 Pleadings, they would have known the Rule 9011 Pleadings should not have been filed.

Fourth, Hartman and Houston did not submit any admissible evidence as to their investigation of the law upon which the Rule 9011 Pleadings relied. How is it that Hartman and Houston, who "used their research and 40+ years of experience as reputable attorneys[,]" did not discover prior to filing the Rule 9011 Pleadings that: (i) the "In Limine Order" were not limine orders; (ii) Morabito could not obtain an injunction against the Trustee without naming him as a party; (iii) state courts cannot enjoin federal courts; (iv) state courts cannot set aside federal court

orders or judgments; (v) the declaratory relief claims of the Injunction Complaint and 60(d)(3) Motion were clearly barred by Nevada Supreme Court case law on claim preclusion involving declaratory relief claims (Boca Park); and (vi) Morabito cannot establish independent standing apart from the Morabito estate by generally concluding these are "independent claims," while at the same time making clear that "[t]he material facts supporting an intentional scheme to perpetrate the fraud upon the court addressed in the [60(d)(3) Motion], all occurred prior to the petition date of June 20, 2013."

Hartman and Houston have provided no explanation under oath because they did nothing. They simply filed the Rule 9011 Pleadings without conducting any investigation of the facts and law underpinning the Rule 9011 Pleadings because, one can reasonably assume, Morabito told them to.

**C.  Absent the Imposition of Monetary Sanctions Under the Undisputed Circumstances, the Judicial System Does Not Properly Function.**

Hartman and Houston allege in the Opposition that they "have acknowledged their mistakes from the beginning and have learned the importance of careful drafting." See Opposition, p. 17. However, Hartman and Houston have not acknowledged their mistakes; to the contrary, Hartman and Houston have exacerbated their mistakes.

Years before the filing the Rule 9011 Pleadings, Mr. Gordon on behalf of the Herbst Parties transmitted a letter dated July 21, 2017 along with nearly 800 pages of supporting documentation (the "July 21 Letter") to David Shemano and Frank Gilmore of Robison, Morabito's then counsel who filed the 2016 Complaint, which provided that the filing and maintenance of the 2016 Complaint was in bad faith and vexatious, and caused the Herbst Parties substantial harm, including attorneys' fees, costs and other expenses, which would not have been incurred had Shemano and Gilmore undertaken a reasonable investigation prior to the filing of the 2016 Complaint. See Exhibit 1 to the Gordon Declaration. The July 21 Letter set forth the investigation and due diligence conducted by the Herbst Parties regarding the allegations and 2016 Claims of the 2016 Complaint, which facts and conclusions were not previously provided to this Court because of this Court's application of the Bankruptcy Rule 7012(b)(6) standards to

9

the Standing/Abandonment Motion, 2017 Remand Motion, and the 2016 Complaint. See id. Notwithstanding that Hartman and Houston attached the July 21 Letter to the Stay Motion and the 60(d)(3) Motion and, thus, had full knowledge of its contents, including that Morabito raised objections to the Ind-CPA Report and allegations regarding Walter A. Dwelle and the Ind-CPA and State Court rejected his arguments regarding working capital and Walter A. Dwelle during the State Court Action, Hartman and Houston filed the Rule 9011 Pleadings based upon the same material allegations as the 2016 Complaint that were found to be not colorable or plausible by this Court in a decision affirmed by the BAP and Ninth Circuit.

On April 2, 2020, after the filing of the 60(d)(3) Motion, Injunction Complaint, and Stay Motion, Hartman and Houston received the Rule 9011 Letter from Mr. Gordon on behalf of the Herbst Defendants, which demanded, consistent with Bankruptcy Rule 9011, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, within 21 days of receipt of the Rule 9011 Letter. Hartman and Houston responded to the Rule 9011 Letter by simply regurgitating the allegations of the Rule 9011 Pleadings, providing no explanation regarding their actions as counsel for Morabito.

Then on May 1, 2020, the Herbst Defendants served Hartman and Houston with a draft of the Sanctions Motion, together with the exhibits, and demanded, consistent with Bankruptcy Rule 9011 and the Rule 9011 Letter, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, all within 21 days of receipt of this Sanctions Motion. Hartman and Houston failed to respond and again refused to comply with the demands for withdrawal and dismissal of the Rule 9011 Pleadings, thereby maintaining the Rule 9011 Pleadings with full knowledge of their factual and legal deficiencies and making the filing of the Sanctions Motion necessary.

Moreover, in their Opposition, Hartman and Houston not only failed to address the numerous deficiencies of the Rule 9011 Pleadings detailed in the Sanctions Motion but spent

most of the Opposition attacking the Herbst Defendants and rehashing the same legal principle and factual allegations that no one disputes, *i.e.*, that *Hazel* permits a claim for fraud upon the court and this Court and the BAP would not rule out the possibility (because it was not before them) that Morabito had independent standing to request a declaratory judgment for fraud upon the State Court provided it would be permitted under applicable law and was not premised upon property of the bankruptcy estate.  Thus, Hartman and Houston's assertion that they have acknowledged their mistakes from the beginning is not supported by their actions.  Hartman and Houston never withdrew or amended anything, thereby requiring the Herbst Defendants to continue to defend against frivolous claims and incur attorneys' fees and expenses relitigating matter already decided in 2010, then 2016, in decisions affirmed by the District Court, the BAP and the Ninth Circuit.

Furthermore, as this Court has already found, Hartman and Houston's continued reliance upon *Hazel* and this Court's statement regarding Morabito's alleged claim to independent standing to commence a declaratory relief claim for fraud upon the State Court do not in any way justify Hartman and Houston's filing and maintenance of the Rule 9011 Pleadings.  Had Hartman and Houston read this Court's Abandonment FF&CL prior to filing the Rule 9011 Pleadings, they would have known that this Court found the 2016 Claims were not only estate claims but were also found to be not colorable or plausible and could not survive a motion to dismiss pursuant to FRCP 12 in a decision affirmed by the BAP and the Ninth Circuit.  Instead, Hartman and Houston filed the Rule 9011 Pleadings, relying upon the same factual allegations set forth in the 2016 Claims, and generally concluded that Morabito was asserting his independent claims.

Morabito is entitled to counsel and his day in court.  However, when his attorneys do not comply with their professional obligations and duties owed to the Court, the judicial system does not and cannot properly function.  Hartman and Houston either failed to conduct a reasonable factual and legal inquiry as required by Rule 9011 prior to filing the Rule 9011 Pleadings, or Hartman and Houston did and decided that their obligations to the profession and duties to the Court were less important than remaining under the control and direction of Morabito and

disregarding the dictates of Rule 9011, which, in either case, has resulted in substantial attorneys' and expenses. Given the new false assertion regarding Mr. Gordon's alleged fraud upon the State Court as well as the continued disregard of this Court's determinations, it is apparent that this also applies to Robison.

Under either circumstance, this Court must impose monetary sanctions upon Hartman and Houston. Otherwise, the judicial system does not function as it was intended.

## II.
## CONCLUSION

Based upon foregoing, the Herbst Defendants respectfully request that the Court grant the Sanctions Motion in its entirety, overrule the Opposition, enter an order ordering that Hartman and Houston pay the attorneys' fees and expenses of the Herbst Defendants' counsel – Garman Turner Gordon LLP and Dickinson and Wright – related to the Rule 9011 Pleadings and all hearings and proceedings before the Court related thereto, and grant any other relief appropriate under the circumstances.

Dated this 31st day of December 2020.

GARMAN TURNER GORDON LLP

By: /s/ Mark M. Weisenmiller
GERALD M. GORDON, ESQ.
MARK M. WEISENMILLER, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (723)-777-3000
Fax: (725)-777-3112
*Attorneys for the Herbst Defendants*