

_____
Honorable Gregg W. Zive
United States Bankruptcy Judge

Entered on Docket
May 17, 2021

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

In re:

PAUL A. MORABITO,

              Debtor.

Case No.: BK-S-13-51237-GWZ
Chapter:  7

Hearing:
Date:  February 4, 2021
Time:  10:00 a.m.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER
GRANTING MOTION FOR AN ORDER IMPOSING SANCTIONS AGAINST
JEFFREY HARTMAN, ESQ. AND HARTMAN & HARTMAN AND DAVID
HOUSTON, ESQ. AND THE LAW OFFICES OF DAVID R. HOUSTON
<u>PURSUANT TO BANKRUPTCY RULE 9011</u>**

The *Motion for an Order Imposing Sanctions Against Jeffrey Hartman, Esq. and Hartman
& Hartman and David Houston, Esq. and the Law Offices of David R. Houston Pursuant to
Bankruptcy Rule 9011* [ECF No. 1099] ("<u>Sanctions Motion</u>")[1] was filed by JH, Inc. ("<u>JH</u>"),
Maryanna Herbst as Trustee of the Herbst Family Trust dated December 17, 2002 ("<u>Trust</u>"), and
Berry-Hinckley Industries ("<u>BHI</u>" and together with JH and the Trust, the "<u>Herbst Parties</u>"), and
Timothy P. Herbst, Troy D. Herbst, and Edward J. Herbst (together, the "<u>Additional Defendants</u>,"
and with the Herbst Parties, the "<u>Herbst Defendants</u>") on May 29, 2020.  The Sanctions Motion
came on for a hearing before the Court on February 4, 2021, at 10:00 a.m. ("<u>Hearing</u>").  Gerald
M. Gordon, Esq. and Mark M. Weisenmiller, Esq. appeared on behalf of the Herbst Defendants
and Kent R. Robison, Esq. and Hannah E. Winston, Esq. appeared on behalf of Jeffrey Hartman,
Esq. and Hartman & Hartman (collectively, "<u>Hartman</u>") and David Houston, Esq., and the Law

---

[1]  All capitalized undefined terms used herein shall be ascribed the definitions set forth in the Herbst Defendants'
Sanctions Motion and Reply, as applicable.

Offices of David R. Houston (collectively, "<u>Houston</u>").

The Court reviewed the Sanctions Motion, the declarations filed in support of the Sanctions Motion [ECF Nos. 1100-01], the opposition to the Sanctions Motion [ECF No. 1135] filed by Hartman and Houston, the Reply and the declaration filed in support of the Reply [ECF Nos. 1139-40] filed by the Herbst Defendants, the sur-reply [ECF No. 1145] filed by Hartman and Houston, all of the exhibits attached to the foregoing, the amended findings and conclusions in support of the Nondischarge Judgment [ECF No. 122 in Nondischarge Proceeding] ("<u>Amended FF&CL on Nondischarge Judgment</u>"), the Nondischarge Judgment [ECF No. 123 in Nondischarge Proceeding], the Court's ruling on Morabito's 54(b) motion [ECF No. 124 in Nondischarge Proceeding], the 2016 Complaint [ECF No. 1-1 in 16-05043-gwz], the Abandonment FF&CL and the Abandonment Order [ECF Nos. 873-74 in the Chapter 7 Case], the affirmances of the Abandonment FF&CL and Abandonment Order by the BAP and Ninth Circuit [ECF Nos. 935 & 1046 in the Chapter 7 Case], the Order Denying Remand and the Dismissal Notice [ECF Nos. 58-59 in 16-05043-GWZ], the BAP and Ninth Circuit affirmances of the Order Denying Remand and Dismissal Notice [ECF Nos. 86 & 90 in 16-05043-GWZ], the 60(d)(3) Motion [ECF No. 1-1 through 1-5 in 20-05003-gwz], the Notice of Removal [ECF No. 1070 in Chapter 7 Case], *Statement of William A. Leonard, Jr., Chapter 7 Trustee Re Notice of Removal* [ECF No. 4 in Adv. Pro. No. 20-05003-GWZ] filed by William A. Leonard, Jr., chapter 7 trustee (the "<u>Trustee</u>"), the Injunction Complaint [ECF No. 1068 in Chapter 7 Case and ECF No. 1 in Adv Pro No. 20-05002-GWZ], the Dismissal Motion as to the Injunction Complaint and supporting declarations [ECF Nos. 25 & 27-28 in Adv. Pro. No. 20-05002-GWZ], the Stay Motion and supporting declaration [ECF Nos. 3-4 in Adv. Pro. No. 20-05002-GWZ], the OST Opposition and Stay Opposition [ECF Nos. 8 and 32 in Adv. Pro. No. 20-05002-GWZ], the First Remand Motion [ECF No. 5 in Adv. Pro. No. 20-05003-GWZ], the First Morabito Declaration [ECF Nos. 12 in Adv. Pro. No. 20-05003-GWZ], the Amended Remand Motion [ECF No. 15 in Adv. Pro. No. 20-05003-GWZ], the Remand Opposition [ECF No. 20 in Adv. Pro. No. 20-05003-GWZ], the Remand Motion Reply and the Second Morabito Declaration [ECF Nos. 23-24 in Adv. Pro. No. 20-05003-GWZ], the Sur-Reply and supporting declaration [ECF Nos. 27-28 in Adv. Pro. No. 20-05003-GWZ], and the

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

2

1    other pleadings, declarations, documents, and transcripts noted upon the record at the Hearing,

2    including, but not limited to, the transcripts of the February 4, 2020 and July 28, 2020 hearings.

3    At the Hearing and after due deliberation and sufficient cause appearing in accordance with

4    FRCP[2] 52, as incorporated pursuant to Bankruptcy Rule 7052, the Court granted the Sanctions

5    Motion based upon the following findings of facts and conclusions of law (together with the

6    findings and conclusions made on the record at the Hearing (the "<u>Findings and Conclusions</u>").

7    **IT IS HEREBY FOUND AND DETERMINED** by this Court as follows:

8    1.    The Court has jurisdiction of the matters raised in the Sanctions Motion as core

9    proceedings pursuant to 28 U.S.C. §§ 157 and 1334.

10    2.    Determining whether to grant the Sanctions Motion is a core proceeding in which

11    the Court may enter a final judgment in accordance with 28 U.S.C. § 157(b)(1) and (b)(2)(A) and

12    (C).

13    3.    Venue of the Chapter 7 Case in this District is proper pursuant to 28 U.S.C. §§ 1408

14    and 1409.

15    4.    Good, sufficient, and timely notice of the Sanctions Motion and Hearing has been

16    given to those to whom notice is required to be given in accordance with the United States

17    Constitution, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of all

18    proceedings regarding or relating to the Sanctions Motion and Hearing was adequate under the

19    circumstances and materially complied with applicable provisions of the United States

20    Constitution, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

21    <u>**FINDINGS OF FACT**</u>

22    **A.    <u>The State Court Action.</u>**

23    5.    JH and P.A. MORABITO & CO. Ltd. ("<u>PAMCO</u>"), the predecessor-in-interest to

24    Consolidated Nevada Corporation ("<u>CNC</u>," and with Paul A. Morabito, the "<u>Morabito Parties</u>"),

25

26

27

28

---

[2] All references to "<u>Chapter</u>" or "<u>Section</u>" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "<u>Bankruptcy Rule</u>" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "<u>FRCP</u>" shall refer to the Federal Rules of Civil Procedure; and all references to "<u>Local Rule</u>" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

3

entered into an *Amended and Restated Stock Purchase Agreement* dated June 28, 2007 ("ARSPA"), whereby JH agreed to purchase the stock of BHI from PAMCO.

6.       A dispute developed regarding the sale of the BHI stock to JH.  The Morabito Parties filed a lawsuit against the Herbst Parties on December 3, 2007 in Department 6 of the Second Judicial District Court in and for the County of Washoe (the "State Court"), Case No. CV07-02764 ("State Court Action").  The Herbst Parties filed numerous counterclaims against the Morabito Parties, including fraud in the inducement, misrepresentation, and breach of contract.

7.       The first substantive dispute that was litigated in the State Court Action was the issue of whether the Morabito Parties had correctly calculated BHI's working capital in the Closing Date Financial Report they created when selling BHI to JH.

8.       Pursuant to Section 2.5(d) of the ARSPA, the parties agreed that, in order to resolve disputes related to the Closing Date Financial Report, "Independent Accountants will promptly be retained to undertake a determination of the Closing Date Financial Report, which determination will be made as quickly as possible" and "will be final and binding on Seller and Buyer."

9.       On January 28, 2008, the Herbst Parties filed the Motion to Compel Compliance with ARSPA §2.5(d).  The Morabito Parties opposed that Motion, and the State Court denied the Motion due to the parties' dispute as to whether the perquisites to the enforceability of ARSPA §2.5(d) have occurred.

10.      The Herbst Parties then filed a *Motion for Reconsideration of the Order Denying Motion to Compel Independent Accounting* (the "Motion for Reconsideration").  After the Morabito Parties again filed an opposition, the State Court granted the Motion for Reconsideration and stayed the State Court Action pending the parties' compliance with ARSPA §2.5(d).

11.      Pursuant to ARSPA §2.5(d) and NRCP 53, the State Court eventually appointed an independent accounting firm, Douglas Wilson Companies, as an arbitrator (the "Ind-CPA") to independently calculate BHI's closing date working capital.

12.      On August 12, 2009, the State Court issued an order (the "Working Capital Order") denying the Morabito Parties' motion to disqualify the Ind-CPA and confirming the Ind-CPA report (the "Ind-CPA Report").

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

4

13.     On August 19, 2009, the Morabito Parties filed a *Notice of Appeal* to the Nevada Supreme Court being Appeal #54412, which was an appeal of the order pursuant to NRS § 38.239 confirming the independent accountants' determination and the order denying a receiver.

14.     The law firm of Robison, Belaustegui, Sharp & Low ("Robison") was substituted in as counsel of record for Morabito in Appeal #54412 on December 1, 2011.

15.     The State Court Action was tried before Judge Brent Adams by way of a bench trial commencing May 10, 2010 and lasted several weeks.

16.     On October 12, 2010, the State Court entered findings of fact and conclusions of law (the "State Court FF&CL") in the State Court Action, which specifically set forth the legal and factual basis for judgment against the Morabito Parties for fraud in the inducement.

17.     The State Court entered a judgment awarding the Herbst Parties total damages of $149,444,777.80 (the "State Court Judgment") on August 23, 2011.

18.     Both prior to and subsequent to the entry of the State Court Judgment, Morabito filed appeals with and sought writs of mandamus from the Nevada Supreme Court and the Herbst Parties filed cross-appeals ("Appeals").  These included appeals #57943, #57944 and #59138, which were all consolidated for all appellate purposes under #59138.

19.     While Morabito was represented by Leif Reid, Esq. and the law firm of Lewis & Roca during the trial in the State Court Action, Robison was associated as counsel of record for Morabito in the State Court Action on February 14, 2011.  However, as early as February 22, 2010, Lippes Mathias Wexler Friedman LLP ("Lippes") was representing Morabito with regard to the State Court Action.

20.     Thus, Morabito and his attorneys, Lewis & Roca, Robison and Lippes, had access to the docket in the State Court Action, including the so called "In Limine Orders".

**B.     The Settlement Agreement and Default of the Settlement Agreement.**

21.     The parties, with the advice of counsel, agreed to settle the State Court Action and, on November 30, 2011, executed the *Settlement Agreement* (the "Settlement Agreement"). Robison represented Morabito with regard to the Settlement Agreement.

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

5

22.     As part of the Settlement Agreement, Morabito also agreed to execute a confession of judgment for $85,000,000 (the "Confession of Judgment").

23.     The Confession of Judgment mirrored the fraud findings and conclusions of the vacated State Court FF&CL, and Morabito expressly, stipulated, acknowledged, and verified as true the findings of fraud in the Confession of Judgment (the "Stipulation of Facts").

24.     Pursuant to the Settlement Agreement, the Appeals were subsequently vacated, as were the State Court Judgment and the State Court FF&CL.

**C.     Morabito's Default and the Confession of Judgment.**

25.     Morabito defaulted under Settlement Agreement when he failed to timely comply with the terms of the Settlement Agreement, including timely paying the Herbst Parties.

26.     As a result of Morabito's breach, the Herbst Parties filed the *Confession of Judgment* on June 18, 2013 in the State Court Action.

**D.     The Chapter 7 Case and the Nondischarge Proceeding.**

27.     On June 20, 2013, the Herbst Parties filed an involuntary petition for relief under Chapter 7 [ECF No. 1 in BK-N-13-51237-GWZ] (the "Chapter 7 Case"), thereby commencing a Chapter 7 involuntary proceeding against Morabito.  At the same time, the Herbst Parties filed an involuntary petition for relief under Chapter 7 against CNC [ECF No. 1 in BK-N-13-51236-GWZ] (the "CNC Chapter 7 Case" and together with the Chapter 7 Case, the "Chapter 7 Cases").

28.     On December 22, 2014, the Court entered its *Amended Order for Relief Under Chapter 7* [ECF No. 168 in Chapter 7 Case] in the Chapter 7 Case and its *Order for Relief Under Chapter 7* [ECF No. 59 in CNC Chapter 7 Case] in the CNC Chapter 7 Case.

29.     On March 20, 2015, the Herbst Parties timely filed their complaint objecting to Morabito's discharge under Section 523(a)(2), commencing Adversary Case No. 15-05019-gwz (the "Nondischarge Proceeding").

30.     On April 30, 2018, this Court awarded the Herbst Parties a nondischargeable judgment for $85,000,000 less amounts paid by Morabito (the "Nondischarge Judgment").  The Nondischarge Judgment was affirmed by the Nevada District Court and the Ninth Circuit Court of Appeals (the "Ninth Circuit").

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

6

**E.**    **The 2016 Fraud on the Court Complaint and its Removal to the Bankruptcy Court.**

31.    On December 16, 2016, the Morabito Parties filed their *Complaint* (the "2016 Complaint") in the State Court, denominated Case No. CV16-02571.  In the 2016 Complaint, the Morabito Parties averred causes of action for: (1) Fraud on the Court; (2) NRCP 60(b)(3); (3) Fraudulent Inducement; and (4) Fraudulent Misrepresentation (collectively, the "2016 Claims"). The alleged basis of the 2016 Claims was that the Herbst Parties defrauded the Morabito Parties, the Ind-CPA, and the State Court, which resulted in the State Court Judgment, the Confession of Judgment, the Chapter 7 Cases, and the Nondischarge Judgment.

32.    The 2016 Complaint was removed to this Court by the Herbst Parties on December 23, 2016.  See ECF No. 1 in 16-05043-GWZ.

**F.**    **The Standing Motion and Abandonment Order.**

33.    On December 28, 2016, the Morabito Parties filed a motion requesting authority to file and prosecute the 2016 Claims on behalf of the estates, or alternatively compel abandonment of the 2016 Claims (the "Standing/Abandonment Motion").  See ECF No. 741 in the Chapter 7 Case.

34.    On June 23, 2017, this Court entered findings and conclusions denying the Standing/Abandonment Motion [ECF No. 873 in the Chapter 7 Case] (the "Abandonment FF&CL") and an order denying the Standing/Abandonment Motion [ECF No. 874 in the Chapter 7 Case] (the "Abandonment Order").

35.    This Court found in its Abandonment FF&CL that the 2016 Claims were estate claims, void, time-barred and not colorable or plausible, could not survive a motion to dismiss pursuant to FRCP 12, and denied the Morabito Parties' request for standing or an abandonment of the 2016 Claims.

36.    The Morabito Parties appealed the Abandonment Order to the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals (the "BAP").  A panel of the BAP found no error in the Abandonment Order.  See ECF No. 935 in the Chapter 7 Case.

37.    On September 4, 2019, the Abandonment Order was also affirmed by the Ninth Circuit.  See ECF No. 1046 in the Chapter 7 Case.

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

7

**G.** **The Order Denying Remand and Dismissal Notice.**

38.    On January 20, 2017, the Morabito Parties filed their *Motion for Remand of Removed Proceeding* (the "2017 Remand Motion") requesting that this Court remand the 2016 Complaint to the State Court.  See ECF No. 7 in 16-05043-GWZ.

39.    This Court denied the Remand Motion (the "Order Denying Remand").  See ECF No. 58 in 16-05043-GWZ.  In the Order Denying Remand, this Court also ordered that:

> 2. The Trustee may file a Notice of Dismissal of this Adversary Proceeding with prejudice in accordance with the provisions of FRBP 7041 and FRCP 41(a)(1)(A) incorporated thereby.
>
> 3. As clarified on the record at the hearing, the Court has not made a finding as to whether the Plaintiffs have independent standing apart from the estate to bring claims against the Defendants based upon the allegations of the Complaint.
>
> 4. Thus, any other claims belonging to the Plaintiffs and not to the bankruptcy estates and not asserted in the Complaint are not before the Court in this Adversary Proceeding and are not affected by this Order ….

See Order Denying Remand, ¶¶ 2-4.

40.    Any attorney admitted to practice before this Court who read the Order Denying Remand should have known that this Court did not give Morabito a green light to file claims belonging to the estate, frivolous claims, or claims brought for an improper purpose.

41.    On October 3, 2017, the Trustee filed a *Notice of Dismissal with Prejudice* (the "Dismissal Notice"), thereby dismissing the 2016 Complaint with prejudice pursuant to Bankruptcy Rule 7041 and FRCP 41(a)(1)(A).  See ECF No. 59 in 16-05043-GWZ.

42.    The Morabito Parties appealed the Order Denying Remand and Dismissal Notice to the BAP.  The BAP found no error.  See ECF No. 86 in 16-05043-GWZ.

43.    On September 4, 2019, the Order Denying Remand and Dismissal Notice were also affirmed by the Ninth Circuit.  See ECF No. 90 in 16-05043-GWZ.

**H.** **The 60(d)(3) Motion Filed in the Vacated State Court Action.**

44.    On January 31, 2020, days prior to the hearing in which this Court stated it would determine whether Morabito should be further sanctioned, including incarceration, for his continued contempt of this Court's orders, Morabito filed his *Independent Motion Under Rule*

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

8

*60(d)(3) Seeking Declaratory Relief and Request for Leave to File Motion in Excess of Page Limitation* (the "60(d)(3) Motion") in the State Court Action.  The 60(d)(3) Motion was filed on behalf of Morabito by Houston and Hartman.

45.    Without leave to amend, Morabito removed CNC and Jerry Herbst as parties to the State Court Action and added Maryanna Herbst as Trustee of the Herbst Family Trust dated December 17, 2002 and the Additional Defendants as defendants.

46.    The 60(d)(3) Motion requested that the State Court grant declaratory relief providing for all of the following:

(i)    a judgment setting aside and vacating the Confession of Judgment action, and setting aside and vacating the Settlement Agreement, and setting aside and vacating the Confession of Judgment, and setting aside such other adverse orders derived from the Confession of Judgment action including but not limited granting declaratory relief under Rule 60(d)(3);

(ii)    to have the State Court take such additional action as may be necessary and appropriate to affect a complete denial of relief to "Defendants" and/or the Trustee in all pending civil and bankruptcy actions including but not limited to the judgment entered by Judge Steinheimer in the Superpumper litigation, Nondischarge Judgment, the Abandonment Order and any Trustee Adversaries resulting from the Confession of Judgment action and the Chapter 7 Cases (though the Trustee was not a named party to the 60(d)(3) Motion);

(iii)    to take such action as the State Court deems necessary against those persons whose fraud and flagrant disregard for the law defiles the State Court; and

(iv)    since the Confessed Judgment action must be vacated, the State Court Case would then stand in the same position as though "Defendant's" corruption had been exposed at the trial.

See 60(d)(3) Motion, pp. 73-74.

## I.    Removal of the 60(d)(3) Motion.

47.    On February 6, 2020, the Herbst Defendants removed the 60(d)(3) Motion by filing the *Notice of Removal* [ECF No. 1070 in Chapter 7 Case] (the "Notice of Removal").

48.    On February 7, 2020, the Trustee filed the *Statement of William A. Leonard, Jr., Chapter 7 Trustee Re Notice of Removal* [ECF No. 4 in Adv. Pro. No. 20-05003-GWZ], in which he stated that: (i) he concurs and supports the Notice of Removal; and (ii) by the 60(d)(3) Motion,

1    Morabito violated the automatic stay of Section 362 in several ways, such that it must not be

2    remanded to the State Court.

3    **J.**      **The Injunction Complaint.**

4          49.    On January 31, 2020, Morabito filed the *Complaint for Declaratory Judgment;*

5    *Request for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C.§ 105 and*

6    *F.R.Bankr.P. 7065 and 9024* (the "Injunction Complaint").  See ECF No. 1068 in Chapter 7 Case

7    and ECF No. 1 in Adv Pro No. 20-05002-GWZ.

8          50.    The first cause of action in the Injunction Complaint is for "Declaratory

9    Determination," which requests "a declaratory determination by the Court that the [Nondischarge

10   Judgment] and the Abandonment Order were obtained as a result of fraud upon the Court in the

11   State Court Action as well as fraud upon this Court."  See Injunction Complaint, ¶¶ 157-58.

12         51.    The second cause of action in the Injunction Complaint is for injunctive relief, and

13   requests "[a]n injunction pursuant to § 105(a) and F.R.Bankr.P. 7065 staying activity in all the

14   [Trustee Adversaries] as well as in [the Nondischarge Action], pending a determination [on the

15   60(d)(3) Motion] by Judge Freeman in CV07-02764 … "  See id., p. 21.

16         52.    Thus, Morabito requested in the Injunction Complaint: (i) a judgment for

17   declaratory relief that the Abandonment Order and Nondischarge Judgment were obtained by fraud

18   pursuant to FRCP 60(d)(3); and (ii) an injunction enjoining the Trustee Adversaries and

19   Nondischarge Action pending resolution of the 60(d)(3) Motion by the State Court.

20         53.    The Injunction Complaint was filed by Houston and Hartman as counsel for

21   Morabito.

22         54.    In Response to the Injunction Complaint, the Herbst Parties filed on March 27,

23   2020 their *Motion to Dismiss Complaint for Declaratory Judgment; for Stay of Proceedings and*

24   *Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and 9024* [ECF No. 25

25   in Adv. Pro. No. 20-05002-GWZ] (the "Dismissal Motion"), the *Declaration of Mark M*

26   *Weisenmiller, Esq. in Support of Motion to Dismiss Complaint for Declaratory Judgment; for Stay*

27   *of Proceedings and Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and*

28   *9024* [ECF No. 27 in Adv. Pro. No. 20-05002-GWZ] (the "Weisenmiller Dismissal Declaration"),

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

10

and the *Declaration of John P. Desmond in Support of Motion to Dismiss Complaint for Declaratory Judgment; for Stay of Proceedings and Injunctive Relief Pursuant to 11 U.S.C. § 105 and F.R.Bankr. Rules 7065 and 9024* [ECF No. 28 in Adv. Pro. No. 20-05002-GWZ] (the "Desmond Dismissal Declaration," and with the Dismissal Motion and the Weisenmiller Dismissal Declaration, the "Dismissal Motion Pleadings").

55. The Dismissal Motion was granted for Morabito's failure to state a cognizable or plausible claim for relief, and the Injunction Complaint was dismissed with prejudice.

**K. The Stay Motion.**

56. On January 31, 2020, Morabito also filed the *Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.Bankr.P. 7065* [ECF No. 3 in Adv. Pro. No. 20-05002-GWZ] (the "Stay Motion"). The Stay Motion was accompanied by the *Declaration of Paul A. Morabito in Support of Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 4 in Adv. Pro. No. 20-05002-GWZ] (the "Morabito Stay Declaration," and with the Stay Motion, the "Stay Motion Pleadings"). The Stay Motion Pleadings were filed by Houston and Hartman as counsel for Morabito.

57. Attached to the Stay Motion as Exhibit 2 is a true and correct copy of a letter dated July 21, 2017 (the "July 21, 2017 Letter") from Gerald M. Gordon, Esq. as counsel for the Herbst Parties to Morabito's then counsel, Robison and David Shemano, regarding the 2016 Complaint and related proceedings. However, Exhibit 2 to the Stay Motion did not contain the approximate 800 pages of documentation attached to and referenced in the July 21 Letter. The July 21 Letter sets forth the investigation and due diligence conducted by the Herbst Parties regarding the allegations and 2016 Claims of the 2016 Complaint, which facts and conclusions were not previously provided to this Court because of this Court's application of the Bankruptcy Rule 7012(b)(6) standards to the Standing/Abandonment Motion, 2017 Remand Motion, and the 2016 Complaint.

58. In in response to the Stay Motion Pleadings, the Herbst Parties filed their *Response to Ex Parte Motion for Order Shortening Time for Hearing on Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 8 in Adv. Pro. No. 20-05002-

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

11

GWZ] (the "OST Opposition") and *Opposition to Motion for Stay of Proceedings Pursuant to 11 U.S.C. § 105 and F.R.BANKR.P. 7065* [ECF No. 32 in Adv. Pro. No. 20-05002-GWZ] (the "Stay Opposition" and together with the OST Opposition, the "Stay Motion Oppositions").

59. As the Injunction Complaint was dismissed with prejudice, the Stay Motion was denied.

**L.    Morabito's Remand Motions.**

60. On February 11, 2020, Morabito filed the *Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 5 in Adv. Pro. No. 20-05003-GWZ] (the "First Remand Motion"), which sought an order remanding the 60(d)(3) Motion to the vacated State Court Action pursuant to 28 U.S.C. 1452(b) or abstaining from hearing it under 28 U.S.C. §§ 1334(c)(1) and/or (c)(2).  See Remand Motion, pp. 3 & 7.

61. In addition to the Remand Motion, Morabito filed: (i) *Declaration of Paul Morabito in Support of Reply to Objections to Request for Order Shortening Time for Hearing on Motion for Remand of Removed Proceeding: Request for Abstention* [ECF No. 12 in Adv. Pro. No. 20-05003-GWZ] ("First Morabito Declaration"); (ii) *Amended Motion for Remand of Removed Proceedings: Request for Abstention* [ECF No. 15 in Adv. Pro. No. 20-05003-GWZ] (the "Amended Remand Motion," and together with the First Remand Motion, the "Remand Motions"); (iii) *Reply to Oppositions to Amended Motion For Remand of Removed Proceedings: Request for Abstention* [ECF No. 23 in Adv. Pro. No. 20-05003-GWZ] (the "Remand Motion Reply"); and (iv) the *Declaration of Paul Morabito in Support of Reply to Oppositions to Motion For Remand of Removed Proceeding* [ECF No. 24 in Adv. Pro. No. 20-05003-GWZ] (the "Second Morabito Declaration").  The Second Morabito Declaration is referred with the Remand Motions and First Morabito Declaration as the "Remand Motion Pleadings."

62. In the Amended Remand Motion, Morabito stated that "[t]he material facts supporting an intentional scheme to perpetrate the fraud upon the court addressed in the [60(d)(3) Motion], all occurred prior to the petition date of June 20, 2013."  See Amended Remand Motion, p. 2.  See also id., p. 8 ("the acts giving rise to the initial fraud on the court all occurred prior to June 20, 2013, the date of the involuntary petition against Morabito.").

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

12

63.     Morabito also stated in the Amended Remand Motion that:

The Notice of Removal [ECF No. 1 in 20-05003-GWZ], asserts "without leave of the State Court, Morabito deleted CNC and Jerry Herbst as parties, and added the Trust and Additional Defendants as defendants." ***The Rule 60(d)(3) Motion is a separate individual claim by Morabito seeking declaratory relief from fraud upon the court identifying only individual claims.*** Morabito is asserting his own legal rights and not the legal rights of others – he is not asserting rights of CNC.

Amended Remand Motion, p. 3 (emphasis added).

64.     There were no facts alleged to support the conclusory allegation quoted immediately above.

65.     The Remand Motion Pleadings were filed by Houston and Hartman as counsel for Morabito.

66.     In response to the Remand Motion Pleadings, the Herbst Parties caused to be prepared and filed their: (i) *Opposition to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 20 in Adv. Pro. No. 20-05003-GWZ] (the "Remand Opposition"); (ii) *Sur Reply to Reply to Oppositions to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 27 in Adv. Pro. No. 20-05003-GWZ] (the "Sur Reply"); and (iii) *Declaration of John P. Desmond, Esq. in Support* of *Sur Reply to Reply to Oppositions to Amended Motion for Remand of Removed Proceeding; Request for Abstention* [ECF No. 28 in Adv. Pro. No. 20-05003-GWZ] (the "Desmond Sur Reply Declaration," and together with the Remand Opposition and Sur Reply, the "Remand Motion Oppositions").

67.     The Remand Motions were denied because the 60(d)(3) Motion asserted only estate claims, sought to enjoin this Court and the Trustee, and set aside and collaterally attack orders and judgments of this Court, including the Abandonment Order and Nondischarge Judgment.

**M.     Hartman's and Houston's Conduct and Rule 9011 Demand.**

68.     Hartman and Houston were aware of the July 21, 2017 Letter and the attachments thereto (see paragraph 57 above) regarding the events which transpired with regard to the 2016 Complaint, 2017 Abandonment Order, Order Denying Remand and Dismissal Notice prior to the filing of the 60(d)(3) Motion, Injunction Complaint, Stay Motion Pleadings and Remand Motion Pleadings (together, the "Rule 9011 Pleadings").

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

13

69. When Hartman and Houston filed the Rule 9011 Pleadings, they knew full well or should have known after investigation and due diligence, as would any reasonable lawyer, that:

(i) the facts alleged and asserted by Morabito in the Rule 9011 Pleadings regarding the history of the litigation between the Herbst Defendants and Morabito did not have and could not have any evidentiary support;

(ii) this Court, as early as 2014, and in subsequent hearings as set forth in the transcripts referred to previously, did not rely upon the vacated State Court Judgment or State Court's Findings and Conclusions. This Court relied on Morabito's verification of the facts contained in the Confession of Judgment.

(iii) the so-called "In Limine Orders" on their face did not support the allegations in the Rule 9011 Pleadings and that Morabito's counsel, including Robison and Lippes, had copies of the "Limine Orders";

(iv) the statement that the working capital dispute was not litigated in the State Court was false since that issue was fully-litigated before the Ind-CPA, who was appointed by the State Court expressly to adjudicate that issue pursuant to the ARSPA §2.5(d), NRS 38.226 and NRCP 53, and whose determination was subsequently confirmed by the State Court;

(v) the charges that Mr. Desmond and Mr. Gordon committed fraud upon the courts (as applicable, the State Court or the Bankruptcy Court) were frivolous, not supported by any evidence, were retaliatory on the part of Morabito and not supported and warranted by existing law;

(vi) in order to seek the relief sought against the Trustee in the 60(d)(3) Motion, the Injunction Complaint and Stay Motion, they were required to include the Trustee as an indispensable party;

(vii) the State Court cannot enjoin and set aside orders, proceedings and actions of this Court;

(viii) Nevada claims preclusion law barred Morabito seeking declaratory relief in the 60(d)(3) Motion and Injunction Complaint; and

(ix) Morabito's newest rendition of the alleged fraud upon Judge Adams has morphed from the Working Capital Order being the "heart of the case" and the fraudulent conduct of the Herbst Parties and their experts (for which Mr. Dwelle was to be a key supporting witness) to now the Working Capital Order never having been litigated or considered by Judge Adams and the fraud being perpetrated by Mr. Dwelle and opportunistically used by the Herbst Defendants for their benefit.

70. On April 2, 2020, Mr. Gordon on behalf of the Herbst Defendants caused to be

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

14

prepared and delivered to Hartman and Houston a letter pursuant to Bankruptcy Rule 9011 and Section 105 with regard to the Rule 9011 Pleadings (the "Rule 9011 Letter").

71.    The Rule 9011 Letter demanded, consistent with Bankruptcy Rule 9011, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, within 21 days of receipt of the Rule 9011 Letter.  Hartman and Houston failed to comply with the demands for withdrawal and dismissal set forth in the Rule 9011 Letter.

72.    In response to the Rule 9011 Letter, Houston and Hartmann delivered to Herbst Defendants' counsel a letter dated April 23, 2020 (the "Response Letter").  The Response Letter simply regurgitated the allegations in the Rule 9011 Pleadings providing no explanation regarding their actions as counsel for Morabito.

73.    Thereafter, the Herbst Defendants served Hartman and Houston with a draft of the Sanctions Motion on May 1, 2020, together with the exhibits, and demanded, consistent with Bankruptcy Rule 9011 and the Rule 9011 Letter, that Houston and Hartman: (i) withdraw the Stay Motion; (ii) withdraw the Remand Motion; (iii) agree to dismiss with prejudice the Injunction Complaint; and (iv) stipulate to entry of an order of the Bankruptcy Court denying the 60(d)(3) Motion with prejudice, all within 21 days of receipt of this Sanctions Motion.  However, Hartman and Houston refused to comply with the demands for withdrawal and dismissal.

## CONCLUSIONS OF LAW

74.    Bankruptcy Rule 9011 provides in pertinent part:

**(b) Representations to Court.**  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law…; [and]

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

15

(4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011.

75.    The United State Supreme Court found that "the central purpose of Fed. R. Civ. P. 11 is to deter baseless filings." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990); see also Newton v. Thomason, 22 F.3d 1455, 1463 (9th Cir. 1994).

76.    "Sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is "frivolous." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (citing Zaldivar v. City of Los Angeles, 780 F.2d 823, 832 (9th Cir. 1986) ("Frivolous" is shorthand for "a filing that is both baseless and made without a reasonable and competent inquiry."). "Either the improper purpose or frivolousness ground is sufficient to sustain a sanction." Townsend, 929 F.2d at 1362; William Villa v. Heller, 885 F. Supp. 2d 1042, 1054-55 (S.D. Cal. 2012).

77.    A claim is frivolous when the court determines that the pleading is (1) not "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law"; and (2) when the attorney failed to make a reasonable and competent inquiry. Id. (citing Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir. 1986)); Townsend, 914 F.2d at 1140 (a claim is frivolous if it is "both baseless and made without a reasonable and competent inquiry."); Zaldivar, 780 F.2d at 831 (a frivolous claim is one that is "legally unreasonable, or without legal foundation.").

78.    Under the first prong, the "trial court must examine the actual circumstances surrounding the case to determine whether the suspect claims were brought without reasonable grounds." Bergmann v. Boyce, 109 Nev. 670, 676-77, 856 P.2d 560, 564 (1993) (superseded by statute on other grounds). The reasonableness test is an objective test. Townsend, 929 F.2d at 1362. The attorney's subjective intent is not considered by the court. See G.C. & K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).

79.    With respect to the second prong, "[a]n attorney has a duty prior to filing a complaint to conduct a reasonable factual investigation and perform adequate legal research to

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

16

confirm whether the theoretical underpinnings of the complaint are warranted by existing law or a good faith argument for an extension, modification or reversal of existing law." Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Trust, 244 F. Supp. 2d 1098, 1102-03 (D. Nev. 2003) (quoting Christian v. Mattel, 286 F.3d 1118, 1127 (9th Cir. 2002)). The reasonableness of an attorney's conduct is measured against that "of a competent attorney admitted to practice before the involved court." See Smyth v. City of Oakland, 329 B.R. 270, 283 (9th Cir. BAP 2005); see also Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) ("The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."); Townsend, 929 F.2d at 1364 (finding that the inquiry is based on what was available to the attorney at the time); Zaldivar, 780 F.2d at 829–30. When an attorney fails to conduct a reasonable inquiry into the facts or law and thereafter files a pleading, it is sanctionable. In re Schivo, 462 B.R. 765, 778 (Bankr. D. Nev. 2011); Townsend, 929 F.2d at 1362.

80. Furthermore, all claims contained in an initial pleading need not be frivolous before the court can grant Bankruptcy Rule 9011 sanctions. Heller v. Cepia L.L.C., 560 F. Appx. 678-679 (9th Cir. 2014) ("The presence of some supported allegations in a pleading does not necessarily shield from sanctions an attorney who also includes unsupported allegations.") (citing Townsend, 929 F.2d at 1363 (en banc) ("It would ill serve the purpose of deterrence to allow ... a 'safe harbor' for improper or unwarranted allegations.")); Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005) (awarding sanctions based on one frivolous claim without considering whether or not other claims were frivolous); In re Grantham Bros., 922 F.2d 1438, 1442 (9th Cir. 1991) (confirming that "partially frivolous initial pleadings are subject to Rule 11 sanctions . . . ."); Hsu v. Intel Corp., 8 F.3d 27 (9th Cir. 1993).

81. Here, the Rule 9011 Pleadings are frivolous – not well grounded in fact, warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. This is clear given the history of the State Court Action and the Chapter 7 Case, the proceedings related to the 2016 Complaint, or even a cursory review of the filings, orders and judgments of the State Court and this Court (like the so called "Limine Orders," Abandonment

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

17

Order, and Nondischarge Judgment) upon which Morabito materially relies in the 60(d)(3) Motion and Injunction Complaint.

82.     There is no basis in fact or law for Morabito's allegations that the Herbst Defendants and their counsel committed fraud upon the State Court or this Court.

83.     Moreover, the Rule 9011 Pleadings were filed with the intent on the part of Morabito to frustrate and stall the Herbst Parties in their efforts to recover on the Nondischarge Judgment and enforce this Court's orders in the contempt proceedings regarding Morabito as well as the Trustee's efforts to recover assets of the estate from Edward Bayuk, Salvatore Morabito and other related parties.

84.     Thus, the Rule 9011 Pleadings were frivolous <u>and</u> filed for an improper purpose.

85.     There was no basis in fact or law supporting the Rule 9011 Pleadings and Hartman and Houston would have known that had they read the documents attached to and incorporated into the Rule 9011 Pleadings.

86.     The material allegations of the Rule 9011 Pleadings are contradicted by the documents attached to and incorporated into the Rule 9011 Pleadings.

87.     First, there was no basis in fact or law supporting Morabito's material allegations that the Ind-CPA Report was somehow set aside by the so called "In Limine Orders" in 2009 and 2010 prior to the State Court Trial and that the Working Capital Order was not considered or litigated by the State Court.  Had Hartman and Houston read the "In Limine Orders" they would have known that.  The "In Limine Orders" contradict and in no way support these material allegations.

88.     The October 1, 2009 order (the "<u>October 1 Entry of Judgment Order</u>") simply provided: (i) the State Court confirmed the Ind-CPA Report; and (ii) the Working Capital Order was on appeal to the Nevada Supreme Court.  It contradicts Morabito's statement that the Ind-CPA Report and Working Capital Order were set aside by the State Court.

89.     Pursuant to Section 2.5(d) of the ARSPA, NRS § 38.226 and the Nevada Rules of Civil Procedure 53, the State Court appointed the Ind-CPA to independently calculate BHI's closing date working capital.  Morabito submitted CNC's Estimated Initial Working Capital to the

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

18

Ind-CPA and played an active role while the Ind-CPA conducted his test work of the Closing Date Financial Report submitted to the Ind-CPA by BHI (the Herbst Parties). The Ind-CPA Report was lodged with the State Court on June 23, 2009 and approved in the Working Capital Order. As such, Morabito's statement that the Ind-CPA Report and Working Capital Order were never litigated is incorrect. It is true that Judge Adams did not try the issue during the "State Court Trial," but that was only because the working capital dispute had already been fully-litigated before the Ind-CPA.

90.     The Ind-CPA Report was then confirmed by the State Court pursuant to NRS § 38.239 over Morabito's objections in the Working Capital Order, and the Working Capital Order was appealed by Morabito to the Nevada Supreme Court. The October 1 Entry of Judgment Order simply provides that it was premature for the State Court to enter a *judgment* on the Working Capital Order while Morabito's appeal of the Working Capital Order was pending. The Working Capital Order (or at least the amount due thereunder) was included in the State Court Judgment.

91.     Moreover, the State Court FF&CL and State Court Judgment make no mention of any adjustment or disallowance of any portion of the Ind-CPA Report or Working Capital Order, and the Ind-CPA Report and Working Capital Order were not amended to provide that the working capital dispute was any amount other than $6.8 million. In fact, the State Court included several findings that directly conflict with Morabito's statement in this regard.

92.     The December 2, 2009 order (the "December 2 Order") provided that the State Court granted the motion to confirm the independent accountants' determination (the Ind-CPA Report and Working Capital Order) as final and binding.

93.     The April 19, 2010 order (the "April 19 SJM Order") also does not support the allegations that the Ind-CPA Report was set aside prior to the State Court Trial or that the Ind-CPA's Working Capital Order was not considered or litigated by the State Court. The Ind-CPA Report was confirmed by Judge Adams in the Working Capital Order and was never disturbed in any way thereafter.

94.     The April 19, 2010 order (the "April 19 Order," and with the October 1 Entry of Judgment Order, December 2 Order, and April 19 SJM Order, the so called "In Limine Orders")

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

19

also provides no support for Morabito's allegation that Ind-CPA Report was set aside prior to the State Court Trial and that the Ind-CPA's Working Capital Order was not considered or litigated by the State Court.

95.    Consequently, each of the so called "In Limine Orders" contradict Morabito's material allegations that Ind-CPA Report was set aside by the In Limine Orders in 2009 and 2010 prior to the State Court Trial and that the Ind-CPA's Working Capital Order was not considered or litigated by the State Court.  Had Hartman and Houston read the "In Limine Orders" they would have known that.

96.    Second, there was no basis in law or fact for Morabito's material allegations that this Court relied upon the validity of the Ind-CPA findings and Working Capital Order in making the Abandonment Order, and had Hartman and Houston read the Abandonment Order they would also have known that.  These material allegations are contradicted by the plain text of the Abandonment FF&CL, which were incorporated into the Injunction Complaint by Morabito's reference.

97.    This Court did not rely upon the Ind-CPA Report or Working Capital Order in making the Abandonment Order; rather, this Court assumed all of the allegations of the 2016 Complaint were true [Abandonment FF&CL, ¶¶ 72, 76, & 82], and denied the request for standing to prosecute the 2016 Complaint or to abandon the 2016 Complaint because this Court found that the alleged 2016 Claims were not plausible or colorable, were time-barred, and could not survive a FRCP 12 motion [Abandonment FF&CL, ¶¶ 85, 92, 98, 100, & 110].  Again, had Hartman and Houston read the Abandonment Order they would have known that.

98.    Third, there was no basis in law or fact for Morabito's material allegations that John Desmond and Gerald Gordon obtained the Abandonment Order and Nondischarge Judgment by defrauding this Court through their transmission of the BHI Check Register to Morabito's counsel, and had Hartman and Houston conducted a reasonable and competent investigation, they would have known that.

99.    The dates that Morabito alleges the Herbst Parties provided the alleged manufactured BHI 2006 Check Register to his counsel are in August 2019, well after the

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

20

Abandonment Order, Order Denying Remand, Dismissal Notice and Nondischarge Judgment, which were docketed on June 23, 2017, September 14, 2017, October 3, 2017 and April 30, 2018, respectively [ECF No. 873 in Chapter 7 Case, ECF Nos. 58 and 59 in 16-05043-GWZ, and ECF Nos. 122-124 in Nondischarge Proceeding]. Because Morabito alleges that the BHI 2006 Check Register was sent to Morabito's counsel (not submitted to this Court) in 2019, Hartman and Houston should have known that the Abandonment Order and Nondischarge Judgment could not have been affected by the alleged fraud and the claim of fraud was frivolous and retaliatory on the part of Morabito.

100.    Fourth, there was no basis in law or fact for Morabito's material allegations that the Nondischarge Judgment was based upon the State Court Judgment or Confession of Judgment, and had Hartman and Houston read the documents incorporated into the Rule 9011 Pleadings they would have known that. This Court made it crystal clear in its Findings, Conclusions, and Order that its Nondischarge Judgment was based upon the preclusive effect of the Confession of Judgment, the Stipulation of Facts ***and*** Morabito's fraudulent and duplicitous conduct inducing the Herbst Parties to agree to the Settlement Agreement and vacate their State Court Judgment for fraud. This Court, as early as 2014, on the record in several hearings, stated that it had not relied upon the vacated State Court Findings, Conclusions, or Judgment, but instead relied upon Morabito's verified facts. As late as early 2020, this Court read the portions of the transcripts from previous hearings to Mr. Hartman stating that this Court had not relied upon the State Court Judgment, Findings, or Conclusions. Nevertheless, counsel failed to take any action whatsoever to correct or eliminate this absolutely unfounded allegation.

101.    In its Amended FF&CL on Nondischarge Judgment, this Court wrote that "[h]ere, the Court is not being asked to give preclusive effect to the [State Court Judgment] and the Court is not relying upon the findings in the [State Court FF&CL] for preclusive effect. Rather, the Herbst Parties are asking the Court to give preclusive effect to the [Confession of Judgment] and the Stipulation of facts in support of the [Confession of Judgment]." See ECF No. 122, ¶ 54. Thus, the Nondischarge Judgment is not based upon the State Court Judgment.

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

21

102. Further, in its decision on the FRCP 54(b) motion in the Nondischarge Proceeding, this Court explained the Nondischarge Judgment was not based solely upon the preclusive effect of the Confession of Judgment. See ECF No. 124 in Nondischarge Proceeding, pp. 2, 10, 12-13.

103. Moreover, in its December 20, 2018 oral ruling on the registration motion [ECF No. 165 in the Nondischarge Proceeding], this Court held that the Nondischarge Judgment was not a declaration that the Confession of Judgment was nondischargeable, it is a separate federal money judgment.

104. On appeal, the District Court agreed. See ECF No. 401 in Nondischarge Proceeding, pp. 6 & 8.

105. Bottom line, had Hartman and Houston conducted even a cursory review of the filings, orders, transcripts, and judgments of the State Court and this Court upon which Morabito materially relies in the Rule 9011 Pleadings, they, and any reasonable lawyer, would have known the Rule 9011 Pleadings should not have been filed.

106. Hartman and Houston have not even asserted that they reviewed the documents attached to and incorporated into the Rule 9011 Pleadings.

107. There was also no basis in fact or law supporting the Rule 9011 Pleadings as to the relief sought against the Trustee and Hartman and Houston either should have known or would have known had they conducted a reasonable and competent inquiry of applicable law.

108. Hartman and Houston did not name the Trustee as a defendant in the Injunction Complaint or add him a defendant in the 60(d)(3) Motion. Nonetheless, Morabito requested that this Court in the Injunction Complaint and the State Court in the 60(d)(3) Motion enjoin and/or set aside the Trustee Adversaries.

109. A fundamental requirement of due process in seeking relief in a complaint is to name as a defendant the party against which the plaintiff is seeking relief. The relief with respect to the Trustee Adversaries and Trustee violates due process and FRCP 65(d). See Mullane v. Cent. Hanover Bank & Tr. Co., 70 S. Ct. 652, 657 (1950) (holding that the fundamental requirements of due process are notice and an opportunity to be heard); FED. R. CIV. P. 65(d)(2) ("(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

22

otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).").

110.    As long-time and experienced litigators Hartman and Houston should have already known this, but in any event, if they had conducted a cursory search of applicable law, they would have known that these requests for relief were not grounded in fact or applicable law, or even a good faith extension of applicable law.

111.    There was also no basis in law or fact supporting the Rule 9011 Pleadings because the 60(d)(3) Motion was barred by Nevada claim preclusion law and had Hartman and Houston conducted a reasonable and competent investigation, they would have known that.

112.    Morabito's second claim for injunctive relief in the Injunction Complaint and the 60(d)(3) Motion have no basis in law or fact.  Morabito's request for declaratory relief in the 60(d)(3) Motion fails under applicable Nevada and federal law and, even if the State Court were to grant the 60(d)(3) Motion, it would not affect the validity of the Trustee Adversaries, the Superpumper judgment or Nondischarge Judgment.

113.    First, the 60(d)(3) Motion and, as such, the second claim for relief of the Injunction Complaint, is barred under applicable Nevada law.  See Boca Park Marketplace Syndications Group, LLC v. Higco, Inc., 133 Nev. 923, 407 P.3d 761 (2017) (recognizing that a coercive claim is excepted from the claim preclusive effect of a prior judgment based upon the same set of facts where the first action included only a declaratory relief claim).

114.    Here, Morabito commenced the coercive action for fraud upon the State Court in the 2016 Complaint, which was determined to be without merit, not colorable or plausible, could not survive a 12(b)6) motion, and was dismissed with prejudice.  Thus, the exception to claim preclusion in Boca Park is inapplicable, and the ordinary claim preclusion rules apply and bar the 60(d)(3) Motion as well as the second claim for injunctive relief in the Injunction Complaint because it is reliant upon the merits of the 60(d)(3) Motion.

115.    Second, much of the relief requested in the 60(d)(3) Motion is prohibited by applicable law.  The 60(d)(3) Motion requests that the State Court take such additional action as

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

23

1    may be necessary and appropriate to affect a complete denial of relief to the Herbst Parties and/or,

2    though not a party, the Chapter 7 Trustee in all pending civil and bankruptcy actions including but

3    not limited to the Nondischarge Judgment, the Abandonment Order, and the Trustee Adversaries.

4    See 60(d)(3) Motion, pp. 73-74.

5         116.    However, the State Court is prohibited from enjoining or interfering with actions

6    before this Court or setting aside this Court's judgments and Hartman and Houston would have

7    known that had they conducted a reasonable inquiry of applicable law.  The United States Supreme

8    Court held in Donovan that state courts are completely without power to restrain federal-court

9    proceedings in in personam actions, even though prohibition is addressed to parties rather than to

10   federal court itself.  See Donovan v. City of Dallas, 84 S. Ct. 1579, 1582-53 (1964) ("Early in the

11   history of our country a general rule was established that state and federal courts would not

12   interfere with or try to restrain each other's proceedings. … That rule has continued substantially

13   unchanged to this time. … While Congress has seen fit to authorize courts of the United States to

14   restrain state-court proceedings in some special circumstances, it has in no way relaxed the old

15   and well-established judicially declared rule that state courts are completely without power to

16   restrain federal-court proceedings in in personam actions like the one here.").  See also Proctor v.

17   Vishay Intertechnology Inc., 584 F.3d 1208, 1229 (9th Cir. 2009) (citing Donovan with approval).

18        117.    There was no basis in law or fact supporting the Rule 9011 Pleadings because

19   Morabito lacked standing to prosecute the 60(d)(3) Motion.

20        118.    In the Standing/Abandonment Motion, Morabito acknowledged that the 2016

21   Claims of the 2016 Complaint were estate property that could be prosecuted by the Trustee but

22   argued that he had independent standing to bring a claim for fraud on the State Court.  See ECF

23   No. 741 in Chapter 7 Case ("With respect to the Declaratory Relief Claim, while the Debtors'

24   estates have standing to prosecute the claims, so do the Debtors and any other party affected by

25   the fraud. See generally, Eyak Native Village v. Exxon Corp., 25 F.3d 773 (9th Cir. 1994).  The

26   Damages and Fraudulent Transfer Claims belong to the estate and the Trustee has exclusive

27   authority and standing to prosecute the Claims.").

28        119.    After this Court denied Morabito standing to prosecute the 2016 Claims and his

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

24

request that the 2016 Claims be abandoned, the Trustee filed the Notice of Dismissal, thereby dismissing the 2016 Claims with prejudice, which Dismissal was affirmed on appeal by the BAP and the Ninth Circuit.

120.    Neither this Court, nor the BAP or Ninth Circuit in their affirmances of this Court's orders, addressed Morabito's contention that he had independent standing apart from Trustee to bring a claim for fraud on the State Court because this Court determined that only estate claims were alleged in the 2016 Complaint.

121.    Morabito now contends in the Remand Motion that "[t]he Rule 60(d)(3) Motion is a separate individual claim by Morabito seeking declaratory relief for fraud upon the court identifying only individual claims." See Remand Motion, p. 3.  However, applicable law does not support Morabito's contention.  Again, Morabito is seeking to prosecute on his own behalf the claims that were asserted in the 2016 Complaint.  The 60(d)(3) Motion is a prepetition claim, held solely by the Morabito estate.

122.    A bankruptcy estate includes all legal and equitable interests in property held by the debtor at the time of filing, including all causes of action the debtor could have brought outside bankruptcy.  See In re Yan, 649 Fed. Appx. 359, 361 (9th Cir. 2016) (not published) (citing In re Jess, 169 F.3d 1204, 1207 (9th Cir. 1999) (citing 11 U.S.C. § 541(a)).

123.    In Yan, the Ninth Circuit found that all of the debtor's substantive allegations indicated that his claims were based upon wrongdoing that occurred before the time of his bankruptcy filing, even though other damage was alleged to have occurred postpetition.  Yan, 649 Fed. Appx. at 361.  The Yan court concluded that the claims as alleged accrued prepetition and were estate claims because "[t]he claims were 'sufficiently rooted in the prebankruptcy past[.]." See id. (citing Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)).

124.    Here, Morabito readily acknowledges in the Remand Motion that "[t]he material facts supporting an intentional scheme to perpetrate the fraud upon the court address in the [60(d)(3) Motion], all occurred prior to the petition date of June 20, 2013."  See Remand Motion, p. 2.  See also id., p. 8 ("the acts giving rise to the initial fraud on the court all occurred prior to June 20, 2013, the date of the involuntary petition against Morabito.").  Thus, the fraud on the

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

25

State Court claim alleged in the 60(d)(3) Motion is "sufficiently rooted in the prebankruptcy past" and estate property.  See Yan.

125.    Moreover, Morabito failed to list his alleged independent right to bring a claim for fraud on the State Court or any claims against the Additional Defendants on his schedules or statements.  Morabito also did not claim his alleged independent right as an exempt asset and such rights were not abandoned to Morabito in the Chapter 7 Case.

126.    Consequently, it is unclear what Morabito possesses that provides him standing to assert claims sufficiently rooted in the prebankruptcy past that were not exempt from his Chapter 7 estate or abandoned to Morabito by the Trustee.  See Canatella v. Towers (In re Alcala), 918 F.2d 99, 102 (9th Cir. 1990) (causes of action which accrued before a Chapter 7 petition is filed are part of the estate vested in the trustee); 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006) (the Bankruptcy Code endows the bankruptcy trustee with the exclusive right to sue on behalf of estate).  See also In re Saylor, 178 B.R. 209, 215 (9th Cir. B.A.P. 1995), aff'd, 108 F.3d 219 (9th Cir. 1997) (if no order had been entered in the underlying Chapter 7 proceeding abandoning the fraudulent transfer cause of action, then judgment creditor lacked any interest in property transferred by debtor and had no standing to bring the fraudulent transfer cause of action, since debtor's equitable interest in transferred property would have come into the estate).

127.    Morabito clearly lacked standing to prosecute the 60(d)(3) Motion and had Hartman and Houston conducted a reasonable and competent inquiry, they would have known that.

128.    An attorney admitted to practice before this Court should have known that the 60(d)(3) Motion raised estate claims that Morabito had no standing to prosecute and this Court, the BAP, and the Ninth Circuit's statements regarding Morabito's alleged independent standing to prosecute the claims of the 2016 Complaint did not give Morabito a green light to file estate claims.

129.    Based upon the foregoing, the Sanctions Motion is granted as set forth herein.

Garman Turner Gordon
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

26

130.    Hartman and Houston shall pay the Herbst Defendants $50,000 twenty-eight days following entry of these Findings and Conclusions and the Order Granting the Sanctions Motion.

131.    The obligation to pay the Herbst Defendants $50,000 is a joint and several obligation among Hartman and Houston.

**IT IS SO ORDERED.**

**Garman Turner Gordon**
7251 Amigo Street. Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

27